### WINTER v. LEWIS.

#### Opinion delivered February 11, 1918.

CONTRACTS—ILLEGAL CONSIDERATION—CONCEALING A CRIME OR STIFLING A PROSECUTION.—Any contract, the consideration of which, in whole or in part, is to conceal a crime or to stifle a prosecution therefor, is necessarily repugnant to public policy, and for that reason is illegal and void.

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk*, Judge; affirmed.

*Hal L. Norwood*, for appellant.

1. Appellant is not a volunteer. If his testimony is true, and it is, appellee is clearly liable. If the agreement between Lewis and Ed Weaver is void, the question

of whether appellant's relationship to the transaction would prevent a recovery, is one of fact to be submitted to a jury under proper instructions. It was error to direct a verdict. Winter was not a party to any contract to conceal a crime or stop a prosecution therefor. He knew nothing of the gambling debt or why the checks were given.

*Geo. A. McConnell,* for appellee.

1. Appellant was a mere "go-between." The check really belonged Weaver & Co. Appellee owed appellant nothing. Appellant was a mere volunteer. 40 Cyc. 222; 2 Elliott on Cont. 632; 23 L. R. A. 120.

2. He had no right to sue. 57 Ark. Law Rep. 219.

3. The suit grows out of a gambling transaction and a contract to dismiss and suppress a criminal prosecution and can not be maintained. Kirby's Digest, § 3690; 80 Ark. 326; 98 *Id.* 274; 20 L. R. A. (N. S.) 484; Daniel on Neg. Inst., § 196a; 80 Ia. 738.

HART, J. S. Winter sued Jas. K. Lewis in the Municipal Court of Little Rock, second division, to recover the sum of $53.40 alleged to be due upon a check given him by the defendant. The plaintiff recovered judgment against the defendant for the amount sued for and the defendant appealed to the circuit court. There the court directed a verdict in favor of the defendant and from the judgment rendered the plaintiff has appealed.

Fred K. Lewis, a young man about nineteen years of age, at the time, was working in Fort Smith, Arkansas, for the Underwood Typewriter Company. He went into a back room at Weaver & Company's and got into a crap game in which Edwin Weaver was the banker. After losing about twelve or thirteen dollars which he had brought with him, he induced Edwin Weaver to cash two checks in his favor for ten and fifteen dollars respectively. He also lost the amount of these two checks in the game. Fred K. Lewis failed to pay the checks and Edwin Weaver had him arrested before a justice of the peace on two warrants for obtaining money under false pre-

tenses. The costs in the two cases amounted to $23.40. It was agreed that Fred K. Lewis would pay to Edwin Weaver the sum of $48.40, being the amount of the two checks and the costs in the two cases in consideration that Edwin Weaver would cause the dismissal of the two criminal cases against him and not voluntarily appear further in any criminal proceedings against him in regard to the matter. This was done. As security for the performance of the contract on the part of Fred K. Lewis, he delivered to Edwin Weaver an Underwood Typewriter which it was agreed should remain in the possession of Weaver until the said sum of $48.40 was paid. A written contract to this effect was entered into. The typewriter in question belonged to the Underwood Typewriter Company and was in the possession of Fred K. Lewis for use as a sample in selling the machines. Fred K. Lewis failed to redeem the machine during the time agreed upon in the contract, and being unable to redeem the machine when called upon for a settlement by the company, his father undertook to adjust the affair. S. Winter acted for Weaver & Company and J. K. Lewis for his son. J. K. Lewis gave Winter a check as agent for Weaver & Company for $48.40, the amount of his son's indebtedness as above stated. In consideration of this check the typewriter was delivered to J. K. Lewis and he returned it to the Underwood Typewriter Company for his son. J. K. Lewis says that he then learned for the first time how his son had been treated in the matter by Weaver & Company and on that account notified his bank not to pay the check. Be that as it may, he allowed the check to go to protest. Winter says that he paid the amount of the check and the protest fees of $4.90 to Weaver & Company. Hence this suit.

It is first sought by counsel for the defendant to uphold the judgment in his favor on the ground that the check was payable to Winter and that Winter was not the proper party to bring the suit. The undisputed facts show that the check was made payable to Winter as agent for Weaver & Company. Therefore the contract

being made in his own name for the benefit of his principal, Winter had a right to bring the action. Kirby's Digest, 6002, and *Shelby* v. *Burrow,* 76 Ark. 558. The court, however, was right in directing a verdict in favor of the defendant. The undisputed evidence shows that Fred K. Lewis became indebted to Edwin Weaver on account of a gambling transaction in the sum of $25.00. Weaver had him arrested for obtaining money under false pretenses in two cases. In consideration of the dismissal of the charges against him, Fred K. Lewis agreed to pay Weaver $48.40, being the amount of the two checks drawn in his favor by Lewis and the costs of the prosecution. He delivered to Edwin Weaver an Underwood Typewriter to be held by him until the payment of the indebtedness. Winter knew all about this transaction. The check sued on in this case was given by the defendant, who was the father of the young man, in order to redeem the typewriter. It is well settled in this State that any contract the consideration of which, in whole or in part, is to conceal a crime or to stifle a prosecution therefor, is necessarily repugnant to public policy, and, for that reason, is illegal and void. *Goodrum* v. *Merchants & Planters Bank,* 102 Ark. 326; *Beal & Doyle Dry Goods Co.* v. *Barton,* 80 Ark. 326, and *Johnson* v. *Graham Brothers Co.,* 98 Ark. 274.

It follows that the court was right in directing a verdict for the defendant, and the judgment will be affirmed.