COLLIER COMMISSION COMPANY *v.* WRIGHT.

Opinion delivered July 7, 1924.

1.  ACCORD AND SATISFACTION—JURY QUESTION.—Where statements were furnished showing the net balance due on the purchase of carloads of peaches with check accompanying the statements, but neither the statements nor the check showed on their faces that the check was tendered in full, it was a question for the jury to determine whether, under the circumstances, the tender was conditioned on its acceptance in full.

2.  ACCORD AND SATISFACTION—INSTRUCTION.—Where a check was tendered in full payment of a disputed claim and was accepted by the payee with knowledge thereof, it became an accord and satisfaction; and it was error to charge the jury that the accept-

ance of the check would not constitute an accord and satisfaction if accepted by the payee as part payment.

3. SALES—BREACH OF PURCHASER—MEASURE OF DAMAGES.—On a breach by a purchaser of a specified number of carloads of peaches which the seller had arranged to procure from farmers and deliver to the purchaser, the seller is entitled to recover the difference between the net price he would have received from the purchaser and the cost of delivering the peaches under the contract.

4. SALES—TENDER OF PERFORMANCE—WAIVER.—A seller is not bound to make a tender of performance of a contract of sale which has been refused in advance by the purchaser.

5. SALES—PERFORMANCE OF CONTRACT.—Where a contract for the sale of a specified number of carloads of peaches stipulated that the purchaser would send an inspector to inspect the cars at the point of shipment, it was not error to instruct the jury that the purchaser would be liable for the peaches either if they were inspected and accepted by its inspector or if, not having been inspected, they were of the grade, quality and condition called for in the contract.

6. PARTIES—RIGHT TO SUE FOR ANOTHER'S BENEFIT.—Under Crawford & Moses' Dig., § 1092, a party may sue on a contract made in his own name, without making other interested persons or the persons for whose benefit the contract is made parties to the suit.

7. APPEAL AND ERROR—JUDGMENT FOR EXCESSIVE AMOUNT—REDUCTION.—Error in awarding an excessive amount may be cured by reducing same.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; reversed in part.

*Hill & Fitzhugh,* for appellant.

1. Appellee was the sole plaintiff in the case. Floyd not only testified that he was a partner with appellee, but also testified to all the elements which go to make up a partnership. These facts having developed, appellant was entitled to the requested instruction to the effect that, if it appeared from the evidence that Floyd was interested in the contracts sued upon, either to the extent of an equal interest in the profits and losses, or to the extent of a half-interest in the profits, and would, in the event of a recovery, be entitled to receive a share thereof, he was a necessary party, and the verdict should be for the defendant, unless he had been made a party. C. & M. Digest,

§ 1089; 4 Ark. 616; 151 Ark. 209; 49 Ark. 100; 74 Ark. 54; 91 Ark. 52; 144 Ark. 621; 134 Ark. 368; 143 Ark. 439; 74 Ark. 437; 89 Ark. 412; 93 Ark. 447; 124 Ark. 143.

2. Under the evidence, there was a clear accord and satisfaction as to three of the carloads of peaches involved. The utmost of Wright's testimony as to his receipt of the statements and check in settlement for these cars is that he had a mental reservation that he would take what he got and not treat the check as full payment, but this will not avail him. He not only made no protest, but he accepted and cashed the check, which showed on its face that it was in settlement of the three cars, and was given to him with the statements showing the full amount due him according to these statements. 150 Ark. 197; 94 Ark. 158; 100 Ark. 251; 98 Ark. 269; 122 Ark. 212; 148 Ark. 512; 134 Ark. 36.

3. The rule as to lost profits is predicated wholly upon one party to the contract being prevented from performing the same by the fault of the other. If he is not so prevented, there is no basis for damages for loss of profits, and if he is prevented by the fault of the other, then the loss is to be measured by the rule announced in *Black* v. *Hogsett,* 145 Ark. 178, 182.

*Warner, Hardin & Warner,* for appellee.

1. There is no defect of parties because of the failure to make Floyd a party plaintiff. There was no partnership existing between appellant and Floyd. *Stone* v. *Riggs,* 163 Ark. 211; 159 Ark. 621; 138 Ark. 281; 152 Ark. 465; 13 C. J. 701, § 805; 6 R. C. L. 882, § 270; 144 Ark. 8-10; 128 Ark. 149-154.

2. The burden was on the appellant to prove an accord and satisfaction, and, in order to do that, it was necessary to show either that there was an express agreement to accept the check as settlement in full, or prove such facts and circumstances as would necessarily lead to the conclusion that there was an agreement between the creditor and debtor, that such check was given and received as a full settlement of the claim. 156 Ark. 370, 374-5; 158 Ark. 512.

3. Plaintiff is entitled to recover for loss of profits. 140 Ark. 73; 136 Ark. 231; 111 Ark. 474; 91 Ark. 180, 192; 9 Exch. 354.

SMITH, J. Appellee instituted this action against appellant to recover on alleged contracts for the sale of peaches—to recover the unpaid price of six carloads of peaches delivered under contract of sale, and to recover lost profits on several other carloads contracted to be sold and delivered, but which appellant is alleged to have refused to accept. There was a recovery below for the full amount prayed for in the complaint.

The principal controversy relates to the nature of the contract between the parties, appellee claiming that the contract was for sale of the peaches directly by appellee to appellant, whereas the claim of appellant is that the contract was that appellant should handle the peaches for appellee merely as broker, and not as purchaser. There was a sharp conflict in the testimony on that issue, and, as it was properly submitted to the jury, we must treat the verdict as conclusive.

The transactions between the parties now under consideration occurred in July, 1922. Appellee was cashier of the Bank of Lavaca, in Sebastian County, and was also interested in farming. Appellant at that time was engaged at Fort Smith in the grain and produce business. The parties entered into an oral contract for the shipment of four carloads of peaches at a stated price, and those cars were inspected, shipped and delivered in accordance with the directions of appellant, and were fully paid for. There is no controversy in the case concerning the payment of the price of those cars. The only controversy is as to the character of the contract between the parties. The sale and shipment of those cars was only brought into the controversy by appellee for the purpose of showing what the contract was. After the delivery of those cars there was another oral agreement for the shipment of more cars, and these were shipped and paid for. Two more cars which were shipped

have not been paid for, and the price of those two cars, one $600 and the other $589, making a total of $1,189, is involved in this suit. The cars were not shipped to appellant, but were shipped to dealers in Kansas City and other places—most of them to Baldwin-Pope Marketing Company, Kansas City.

The claim of appellant is, as before stated, that it acted as broker, and that these cars were shipped to Baldwin-Pope Marketing Company as purchasers.

The claim of appellee is that the sales were to appellant, and were shipped to the consignee under appellant's direction.

Appellant contends, as a further defense to these two items, that there was a defect in the quality of previous shipments to the Baldwin-Pope Marketing Company, and that the price of these two cars was credited on the account of Baldwin-Pope Marketing Company against appellee for such shortage. This is but another way of contending that appellant was not the purchaser, but merely handled the shipments as a broker, and is not responsible as purchaser.

The finding of the jury on the issue as to the nature of the contract between the parties is necessarily conclusive as to the liability of appellant for these two items.

There was still another contract for the sale and shipment of fifteen carloads, and this action includes the balance on the price of four carloads shipped and received under the contract. The net price of three of the cars amounted, according to the contention of appellee, to the aggregate sum of $1,431.25, and, after crediting the sum of $517.88 paid to appellee, it leaves a balance of $913.37. The price of the fourth car amounted, according to the contention of appellee, to the sum of $543.75, and, after crediting the sum of $122.91 paid by appellant to appellee after the commencement of this suit, it leaves a balance of $420.84. The contention of appellant is that the amount paid on the three cars was accepted by appellee under such circumstances as constituted an accord

and satisfaction.  The facts with reference to the payment on those three cars were that appellant delivered to appellee an itemized statement as to each one of the cars, showing the number of bushels of peaches, gross price, and the price per bushel, the freight, cost of icing, and commissions on each car, and showing the net balance of the price, after deducting the freight, expenses and commission.  These statements were delivered to appellee with a check covering the aggregate of the three net amounts shown by the statements, and appellee received the check and statements without comment, and cashed the check.  The present action was commenced a few days thereafter.  The payment on the last car was made in the same way, except that it was made after the commencement of this suit.  Counsel for appellant contend that the facts stated constituted, beyond dispute, an accord and satisfaction, and that the court should have given a peremptory instruction, at least as to the price of the three carloads embraced in the payment made prior to the commencement of the suit.  We cannot agree with counsel in this contention, for neither the statements nor check delivered by appellant to appellee showed on their faces any statement that the payment was tendered in full, nor was any condition imposed on the face of the check or statements.  Therefore it was a question of inference for the jury to determine whether, under the circumstances, the tender of payment was made on condition that it be accepted in full.  *Longstreth* v. *Halter,* 122 Ark. 212; *O'Leary* v. *Keith,* 134 Ark. 36; *Arkansas Z. & S. Corp.* v. *Silver Hollow Min. Co.,* 148 Ark. 512; *Beeson-Moore Stave Co.* v. *Brewer & Story,* 158 Ark. 512.

It is also contended that the court erred in its charge to the jury on this issue.  Appellant requested the court to give instruction No. 9, which reads as follows:

"If you find from the evidence that the defendant, Collier Commission Company, rendered statements to the plaintiff, Lawrence Wright, of each of three cars of

peaches sold by them, which statements purported to give the amount received for the peaches, less the commissions, freight and icing charges, and showed a balance in favor of the said plaintiff, and each of said statements were accompanied by a check showing the identity of the cars for which the statements were rendered, and the said statements and the check were accepted by the plaintiff, Lawrence Wright, the check cashed by him, then you are instructed he cannot recover on account of said three cars for which said statements were thus rendered and check given and accepted by him.''

The court refused to give the instruction as asked. and modified it by adding the following: ''Unless you find from the evidence that the checks were only accepted by plaintiff Wright as part payment, and, in that event, you should find for plaintiff Wright such sum as the evidence shows is due him, if any.'' Appellant objected to the modification, and saved exceptions.

The instruction as requested by appellant was erroneous, and the court properly refused to give it, for the reason that it stated in peremptory terms that the delivery and acceptance of the statements and check constituted an accord and satisfaction. This is not correct, for the reason, already stated, that neither the statements nor the check contained any condition that the payment was to be accepted in full, and the issues should have been submitted to the jury whether the payment, under the circumstances, constituted an accord and satisfaction. *O'Leary* v. *Keith, supra.* The court could properly have refused the instruction and have given nothing in its place, for it was the duty of appellant to ask a correct instruction. But this the court did not do. On the contrary, the court modified the instruction by adding the qualification, ''unless you find from the evidence that the checks were only accepted by plaintiff Wright as part payment.'' Appellant objected to this modification, and excepted to the action of the court in giving it. While, as we have said, appellant should have asked a correct

instruction, his failure to do so did not deprive him of the right to object to an incorrect instruction on the subject covered by the instruction which he asked. The court might very well have refused to give an instruction on this question, for the reason that a correct instruction was not asked, but, having attempted to charge the jury on this question by modifying the instruction asked, a correct instruction should have been given.

The instruction as given was not a correct declaration of law, for it made the intention of Wright in accepting the check conclusive of its effect. Under the instruction, the jury would naturally, or very probably, have concluded that it was immaterial that appellant tendered the check in full payment of the item which it purported to cover if Wright did not, in fact, accept it as such, whereas the law is that, if the check was tendered in full payment of the disputed items covered by it, and Wright was so advised, it became an accord and satisfaction upon his acceptance of the check. Such is the effect of the authorities cited above.

The finding of the jury on the issue as to whether the sale was made directly to appellant as purchaser, or merely to other purchasers through appellant as broker, is conclusive as to the liability of appellant for the balance due on these cars after crediting the amounts paid. But the jury's finding as to whether there was an accord and satisfaction as to the three cars referred to in instruction No. 9 is not conclusive of that question, for the reason that this issue was not submitted under an instruction correctly declaring the law.

The remainder of the amount sued for and recovered pertains to the item of lost profits on account of the failure of appellant to accept the remainder of the fifteen cars covered by the last contract. Appellee relies for recovery upon the fact that there was a contract for a specific number of cars at a specified price, that appellant broke the contract by refusing to take any more cars after acceptance of a certain number, and that there was a

difference between the stipulated price which appellant was to pay and the price at which appellee had engaged the peaches from growers in the locality where he was operating, which said difference would have accrued to appellee as profit on the consummation of the sale. It is also shown that there were certain expenses incurred by appellee in the performance of the contract, which constituted a loss to him on appellant's refusal to perform the remainder of the contract. If, as contended by appellee, there was a contract between him and appellant for the sale and purchase of a specified number of cars, which appellee had arranged to procure from farmers and deliver to appellant, and that appellant broke the contract, then appellee is entitled to recover, as his profits in the deal, the difference between the net price he would have received on the sale to appellant and the cost of delivering the peaches under the contract. *Black* v. *Hogsett,* 145 Ark. 178. The principal issue of fact, then, is whether or not, after having determined that there was a contract between the parties, appellant broke the contract by refusing to take the remainder of the carloads specified in the contract. There was a sharp conflict in the testimony on this issue, as upon others in the case. Appellant contended on this branch of the case, as well as on the others, that he did not purchase the peaches at all, but was merely a broker. He also testified that the dealer in Kansas City to whom shipments were being made refused to take any more cars on account of the claim that the peaches were not of good quality. Mr. Collier, who testified in the case, testified that, after this controversy arose, he told his inspector, Plunkett, not to accept any more shipments, that the deal was off. Appellee testified that his contract was solely with appellant, and that he was ready and willing to complete the contract, but that appellant declared the deal off. The jury were warranted in finding from this testimony that there was a breach of the contract on appellant's part.

It is suggested by counsel for appellant, in the argument, that appellee should have shipped the cars, or offered to ship them, in order to put himself in an attitude to recover damages, but this is not true, for the reason that appellant declined in advance to take any more cars, and appellee was not bound to go out and buy the peaches and load them into cars when he was notified in advance that they would not be accepted. It is an elemental principle of law that a party is not bound to make a tender which has been refused by the other party in advance.

There are other assignments with reference to the rulings of the court in giving or refusing or modifying instructions. The evidence adduced in the case shows that, under the contract of sale, appellant was to send an inspector to inspect the cars at the point of loading and shipment. The testimony also shows that appellant did send an inspector, who inspected some of the cars, but that he had to cover a large territory and was not able to be present at the loading of each car. There was evidence tending to show that appellee took this matter up with appellant, and it was agreed that the inspector should instruct the loaders, and should be present as often as possible when loading was being done.

The court gave, over appellant's objection, the following instruction at the request of appellee:

"5. You are instructed that, if you find from the evidence that the defendant entered into a contract for the purchase of peaches from the plaintiff, by the terms whereof it was in part provided that the defendant should inspect said peaches at the loading points, and that, pursuant to the terms of said contract, if any, the defendant appointed an inspector for the purpose of inspecting and examining said peaches, in its behalf, at the time that they were loaded in the cars at the loading points, and that said inspector, acting under the directions of the defendant and as its representative, did inspect said peaches and accepted same, then, even though you may

find that said peaches were defective in quality, the defendant is not entitled to set up such defective condition, if any, in defense to the payment of the purchase price, if any, that remains unpaid for said peaches."

Appellant requested the court to give the following instruction, which was refused:

"2. You are instructed that, if you find from the evidence that the cars numbered A. R. T. 10898 and A. R. T. 11419 were in fact sold to the defendant, and you further find that the peaches loaded therein were not of the grade, quality and condition called for in the contract between the parties, you must find for the defendant."

The court refused to give the instruction as requested, but modified it by adding the following: "Unless you further find that the representative of the Collier Commission Company accepted same for defendant Collier Commission Company; in that event you should find for plaintiff Wright such sum as you think may be due him."

Appellant requested the court to give instruction No. 5, which reads as follows:

"You are instructed that the plaintiff must prove by a preponderance of the testimony the contract as defined in the preceding instruction, and also, before he can recover upon any car sued for in the complaint, that said car was inspected by a representative of the defendant at the point of loading and was accepted by a representative of the defendant at the point of loading, as containing peaches of the grade, quality and condition called for in the contract, and, unless plaintiff establishes this by the preponderance of the testimony, you must find for the defendant, Collier Commission Company."

The court refused to give the instruction as requested, but modified it by adding the words, "unless you should further find from the evidence that Wright had complied with his contract in quality of peaches and in loading the same, then you should find for the plain-

tiff Wright such sum as you may find from the evidence is due him.''

It is contended that these instructions as modified erroneously stated the applicable principles of law. We do not think so. It is true that it was agreed as a part of the contract that appellant would send an inspector to accept the cars at the point of shipment, but there was no agreement, so far as the evidence shows, that the decision of the inspector should be conclusive. It is not a case where parties have selected a disinterested third party to settle controversies arising during the progress of the performance of the contract. Appellant was to inspect the peaches for its own benefit, but, if the peaches came up to contract with respect to quality, appellant was bound to accept them. So the law was correctly stated, as a whole, that, if the peaches tendered were actually accepted by the inspector, then appellant was liable for the contract price, regardless of the quality of the peaches; and, on the other hand, if appellant failed to inspect, it was liable, regardless of such failure, if the peaches tendered and shipped were in fact of the quality specified in the contract. We are of the opinion that the case went to the jury upon instructions which were substantially correct.

Finally, it is contended that there was a defect of parties, in that another person—Floyd, by name—was a partner with appellee in the performance of the contract, and that he should have been made a party plaintiff. During the progress of the trial appellee introduced Floyd as a witness to establish the fact that the contract was complied with on his part. On cross-examination the fact was drawn out from him that he had an agreement with appellee whereby he was to share with appellee the work and expense of performing the contract, and was to share equally in the profits or losses. Appellant asked an instruction stating, in substance, that, if Floyd was a partner with appellee, the verdict should be in favor of appellant because of the fact that Floyd had not been made a party. The court refused

to give that instruction. We are of the opinion that the court was correct in its ruling, and that, according to the undisputed evidence, appellee was entitled to sue on the contract without making Floyd a party to it. It is undisputed that, whatever the terms of the contract were, it was one solely between appellant and appellee. Neither party disputes that fact. This being true, appellee had the right to sue without making Floyd a party, even though the latter was interested in the performance of the contract, or even if he had been the sole beneficiary under the contract. Our statute provides that "a person with whom, or in whose name, a contract is made for the benefit of another * * * may bring an action without joining with him the person for whose benefit it is prosecuted." Crawford & Moses' Digest, § 1092. This court has often held that, under this statute, a party may sue on a contract made in his own name without making other interested parties, or the persons for whose benefit the contract is made, a party. *Shelby* v. *Burrow,* 76 Ark. 558; *Beekman Lbr. Co.* v. *Kittrell,* 80 Ark. 228; *Starnes* v. *Boyd,* 101 Ark. 469; *Winter* v. *Lewis,* 132 Ark. 399. If, as some of the evidence tended to show, Floyd was a partner with appellee, he was a proper party in bringing the action and could have been joined, but he was not a necessary party, and his absence did not defeat the right of appellee, in whose name the contract was made, to recover.

The court's error in giving modified instruction number five was prejudicial to appellant only to the extent of the amount found by the jury on the additional price of the three cars which appellant contends was covered by the accord and satisfaction. The additional amount over and above the amount paid on the accord is the sum of $913.37, as shown by the statement hereinbefore set forth, and the error may be eliminated by reducing the judgment to that extent and affirmed as so reduced. The right to recover the price of the three carloads of peaches involved in this part of the controversy may be adjudicated separately on the question of

accord and satisfaction, and the cause will be remanded as to that feature for a new trial. In all other respects the judgment will be affirmed.

WOOD, J., dissents.