HAMPEL-LAWSON MERCANTILE COMPANY *v.* POE.

Opinion delivered November 16, 1925.

1. ATTORNEY AND CLIENT—NEGLIGENCE—INSTRUCTION.—In an action by client against attorney for failure to file a chattel mortgage in the proper county, it was error for the court to declare as a matter of law that the attorney was not negligent if, in reliance on the client's statement that the mortgagor was a foreign corporation, he filed the mortgage in the county where the chattels were situated, instead of in the county of the mortgagor's residence (it being in fact a domestic corporation), where there was evidence that the attorney's attention was called to the fact that the validity of the filing was questioned, so that it became a question for the jury whether the attorney exercised ordinary care despite this statement.

2. ATTORNEY AND CLIENT—NEGLIGENCE.—The exercise of reasonable and ordinary care by an attorney contracting to perform services for his client means that he should use such care, skill and diligence as men of the legal profession commonly exercise in matters of professional employment.

4. ATTORNEY AND CLIENT—NEGLIGENCE—JURY QUESTION.—In an action by client against attorney for negligence in filing the client's mortgage in the wrong county, it was not error to refuse to instruct that the attorney was negligent if, after filing the mortgage, the client advised the attorney that some question had been raised as to the validity of the mortgage on account of its being filed in a particular county, whereupon this attorney stated that it was properly filed, since whether or not such facts constituted negligence was a question for the jury.

5. ATTORNEY AND CLIENT—NEGLIGENCE—INSTRUCTION.—In an action against a lawyer for negligence in filing his client's mortgage in the wrong county, while it was competent for the attorney to prove that he made inquiry of the president of the client as to whether the mortgagor was a domestic corporation, and was assured that it was a foreign corporation, as tending to show that the attorney exercised ordinary care in filing the mortgage in the proper county; it was error for the court under the circumstances to declare that the attorney was not negligent in relying upon such statement.

6. ATTORNEY AND CLIENT—NEGLIGENCE—EVIDENCE.—In an action by a mortgagee for negligence of its attorney in filing a mortgage for future advances in the wrong county, testimony of a witness tending to prove that such mortgage had been satisfied was competent as tending to prove that no damages had been sustained by reason of the attorney's negligence.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris,* Judge; reversed.

*Owens & Ehrman,* for appellant.

*Pace & Davis* and *R. E. Wiley,* for appellees.

WOOD, J.   This is an action instituted by the Hampel-Lawson Mercantile Company, hereafter called appellant, a domestic corporation engaged in the mercantile business at Bigelow, Arkansas, against Sam T. and Tom Poe, a firm of practicing attorneys of the Little Rock bar, hereafter called appellees. It is alleged in substance in the complaint that the appellant employed the appellees on or about the 15th day of October, 1920, to prepare a chattel mortgage to be executed by the Fourche River Lumber Company, a domestic corporation, hereafter called the Fourche Company; that the mortgage was to secure an existing indebtedness of $25,000 and to secure additional advances; that Sam T. Poe of the appellees prepared the mortgage, and the same was executed by the Fourche Company and delivered to the appellant, and the appellant had directed its secretary in the presence of Sam Poe to file the same in Perry County. Whereupon Poe stated that he had agreed with the Fourche Company to withhold the mortgage from record four or five days in order that the same might be

paid, and that if the same were not paid he would see that it was properly filed; that the note evidencing the existing indebtedness of $25,000 was paid on the 24th of January, 1921, at which time the Fourche Company owed the appellant an additional sum aggregating $25,257 for supplies which had been furnished the Fourche Company between October 15, 1920 and January 24, 1921; that about October 25, 1920, the appellant received a statement from the clerk of Saline County of an account for the filing of the mortgage in that county, whereupon the appellant communicated such fact to Sam Poe and notified him that the mortgage had been filed in the wrong county. Poe assured the appellant that the mortgage had been properly filed. A short time thereafter appellant learned that a question had arisen as to whether the mortgage had been properly filed, and it again, through its manager, called Poe and advised him of the importance of seeing that the mortgage was properly filed and requested him to file the same in Perry County in order to avoid any mistake. Poe again advised the appellant that the mortgage had been properly filed, and that the appellant could furnish the Fourche Company merchandise thereunder, if, in appellant's opinion, the mortgage security was worth the amount of the merchandise furnished; that on the 24th of January, 1921, when the indebtedness of the Fourche Company to appellant evidenced by the note was paid, the secretary of the company stated that the mortgage was not worth the paper it was written on, and appellant again at that time advised Poe of the situation, and Poe again assured the appellant that the mortgage was a valid lien upon the property.

The appellant alleged that on the 9th of February, 1921, the Fourche Company executed a mortgage on three shay engines, the property which had been previously mortgaged to the appellant, to the Central Supply Company, which company filed its mortgage in Perry County; that a short time thereafter insolvency pro-

ceedings were instituted against the Fourche Company in the United States District Court at Little Rock, and that the appellant and the Central Supply Company filed interventions setting up their respective claims in the bankruptcy proceedings against the Fourche Company; that, upon the final hearing of said cause in the Federal Court, it was determined that the Central Supply Company's mortgage lien on the property was superior to that of the appellant, because of the fact that its mortgage had been filed in Perry County, the domicile of the Fourche Company, and the mortgaged property was directed to be sold, which sale resulted in the payment to the Central Supply Company of the sum of $13,329 out of the proceeds of such sale, and to the appellant the balance in the sum of $471. The appellant alleged that thus, through the gross negligence of the appellees in failing to file the mortgage in the proper county, the appellant failed to receive the sum of $13,329, which it would have received if the mortgage had been properly filed; that this sum would be subject to a deduction of approximately fifteen per cent., which it was estimated would be paid to the common creditors by the receiver, making appellant's net loss the sum of $11,334.65, for which, with interest, it prayed judgment against the appellees. The appellant filed with, and made an exhibit to, the complaint a copy of the mortgage executed by the Fourche Company to appellant, and also a copy of the mortgage executed by the Fourche Company to the Central Supply Company.

The appellees, in their answer, admitted their employment by the appellant as attorneys, but denied that they were employed to prepare a mortgage; they alleged that they were engaged by the appellant to make collection of a note for $25,000 which the Fourche Company had executed to the appellant; that, in the course of their efforts to collect this note, they had the mortgage executed by the Fourche Company to the appellant, and on their own motion and without any instruction from the appellant they inserted the provision in the mortgage for

the securing of further advances. They admitted that they prepared the mortgage covering the property described in the complaint, and that they caused the same to be filed in Saline County, where the property mortgaged was located, and alleged that they did this in good faith and without negligence on their part as one of the steps in the service they were to render the appellant in the collection of the note. They further alleged that they filed the mortgage in Saline County by a mistaken belief on their part, which mistake was not induced by any negligence on their part, that the mortgagor was a foreign corporation, and that the mortgage should be filed in Saline County, where the property was located; they further alleged that the note they were employed to collect was fully paid as a result of their efforts, and that it was paid with the agreement and understanding with the appellant that the mortgage should be canceled and the property embraced therein released. They denied specifically all the allegations of negligence and all the other material allegations of the complaint.

The testimony adduced by the respective parties tended to sustain the allegations of their pleadings. C. L. Sailor, over the objection of appellant, was allowed to testify that, when he paid the note of $25,000, evidencing the indebtedness at the time the mortgage was executed, the money was paid and accepted with the understanding that the mortgage was to be fully satisfied.

It is the contention of the appellees that the mortgage executed by the Fourche Company to the appellant was recorded in Saline County because of the misapprehension of fact on the part of Sam T. Poe, and that such misapprehension was caused by a statement made to him by the president of the appellant to the effect that the Fourche Company was a foreign corporation. Sam Poe testified that, after the mortgage was executed, he asked Lawson, president of the appellant, whether the Fourche Company was a foreign or domestic corporation, and that Lawson replied that it was a foreign corporation.

Poe stated that he then explained to the appellant that Saline County was the proper place to record the mortgage because that was the place where the property was located at that time.  On the other hand, Lawson testified that he did not say anything to Sam Poe with reference to the Fourche Company being a foreign corporation—that it never entered his mind.  His testimony was that, when Sam Poe brought back the mortgage to appellant, the secretary and treasurer of appellant was instructed to carry the mortgage to Perryville and record it, whereupon Sam Poe stated that he had promised not to have the mortgage recorded for a day or so, and remarked that he would take care of the filing of the mortgage.  The testimony of Lawson was corroborated by George Volman, secretary and treasurer of appellant, who testified in effect that Sam Poe took the mortgage away with him for the purpose of filing, and filed the same in Saline County.  The testimony of both Lawson and Volman was to the effect that, a short time after this, appellant received a statement of account from the clerk of Saline County for the filing of the mortgage; that appellant paid the account, and immediately communicated with Poe, and asked him if the mortgage was filed in the proper county, stating to him in effect that they were furnishing the Fourche Company merchandise on a mortgage, and that they did not want any mistake made in regard to the filing of same in the proper county, and that Poe replied to this, saying, ''I am running this job.'' Their testimony was to the effect that the appellant had employed Poe to protect its interest in properly filing the mortgage; that it had implicit confidence in him and depended absolutely on him, and asked him to record the mortgage in Perry County if that was the proper county.

H. S. Spivey, who was the vice-president of the appellant, testified in substance that, as soon as he learned that the mortgage had been filed in Saline County, he went to Poe's office and told him that he had learned from a reliable source that the mortgage was filed in the

wrong county, and suggested to Poe that appellant wanted the mortgage to be absolutely safe, and that witness thought it would be a good policy to file the mortgage in both counties; thereupon Poe replied, "You don't know anything about it; it is filed in the proper place." This witness stated that he was in Poe's office several times in regard to it, expressing his uneasiness about it, and Poe each time stated that it was all right. This witness also stated that appellant was relying upon Poe, and the information he gave him concerning it was that appellant was selling merchandise on the mortgage security. Poe knew that fact.

Poe, in his testimony, stated that he did not remember any conversation with Spivey or Lawson about the mortgage being recorded in the wrong place; he said it was barely possible they had asked him if the mortgage was recorded, but there was never any suggestion by them that it was recorded in the wrong place. Poe's testimony further was that he was only employed to collect the existing indebtedness, and when he did this his employment was at an end; that the provision in the mortgage covering further advances was inserted on his own motion, and that he was not employed to have the mortgage executed to cover future advances. But the testimony of the witnesses for the appellant was to the effect that appellant employed Poe to draft the mortgage so as to secure the existing account and also future advances.

It will thus be seen that there is a sharp conflict in the testimony on the issues of fact in the case, and the verdict of the jury in favor of the appellees would be conclusive here on these issues, if they had been submitted to the jury under correct declarations of law. The court instructed the jury at the request of the appellees in their prayer for instruction No. 2 that, if they believed that the appellant informed Poe that the Fourche Company was a foreign corporation, and that Poe, in reliance upon that statement, filed a mortgage in Saline County

where the property mortgaged was situated, their verdict should be in favor of the appellees; and further, in their prayer for instruction No. 3, if the jury believed that the appellees were employed only to collect the existing indebtedness of $25,326.34, and that the provision for securing future advances was written in the mortgage by the appellees as a voluntary service for the accommodation of their clients, and for which they made no charge and received no compensation, then the verdict should be in favor of the appellees. The court, at the request of the appellant, granted its prayer for instruction No. 2, which, in substance, told the jury that if they found from the testimony that the appellees were employed for a valuable consideration to prepare the mortgage so as to secure present indebtedness and future advances, and if they found, from the testimony, that the appellees undertook, in connection with such employment, to file the mortgage so as to make the same a valid lien on the property embraced therein, and negligently filed the same in the wrong county, by which the appellant was damaged, then the verdict should be in favor of the appellant.

The appellant's prayer for instruction No. 5 is as follows: "You are instructed that if you find from the testimony that, after said mortgage was filed by the defendants, and prior to the mortgage being executed by the Fourche River Lumber Company to the Central Supply Company, of Little Rock, Arkansas, the plaintiffs advised said defendants that some question had been raised about the validity of its mortgage on account of it being filed in Saline County, instead of Perry County, and that said defendants advised the said plaintiff that the mortgage was properly filed, and that the plaintiff could go ahead and continue to furnish the mortgagor supplies on the strength of the mortgage being a valid one, and that plaintiffs, acting on the advice of said defendants, did so, and as a result charged quantities of supplies to the mortgagor, the defendants would be liable to the plaintiffs for such damage as it sustained by

virtue of the mortgage subsequently being declared to be invalid, on account of the negligence of said defendant in failing to properly file said mortgage."

The court refused the above prayer as offered, but modified and gave the same after adding at the conclusion thereof the following: "Unless you find from the evidence that the defendant, Sam T. Poe, believed and relied upon a statement alleged to have been made, that the Fourche Lumber Company was a foreign corporation." The appellant objected to the ruling of the court in refusing its prayer for instruction No. 5, and to its ruling in modifying and giving the instruction as modified. The appellant also presented prayers for instruction Nos. 6 and 7,* which were refused.

On its own motion, the court gave the following instruction: "If you find for plaintiff, you will assess its damages at whatever additional amount you may find from the evidence it would have received if the mortgage had been properly filed in Perry County. By additional amount is meant the amount in addition to the $471 paid on plaintiff's claim, against Fourche River Lumber Company, and the maximum dividend to be paid by Fourche

---

*Prayers for instructions Nos. 6 and 7 were as follows:

"6. You are instructed that, even though you may find from the testimony that at the time said defendant, Sam Poe, had said mortgage recorded, he was not advised as to the statutory requirements to be followed to make said mortgage a valid lien, but that thereafter and before the execution and filing of the Central Supply Company's mortgage, his attention was called to the fact that the lien sought to be created by plaintiff's mortgage was probably invalid on account of same not being filed in the proper county, and that after the matter was called to his attention he negligently and carelessly failed to heed said suggestion, then your verdict will be for the plaintiff.

"7. If you find for the plaintiff, you will assess the damages in the sum of $13,329, provided you further find from the testimony that the maximum dividend to be paid by the Fourche River Lumber Company, on the common claim of the plaintiff, plus $471 paid to it, will not reduce its claim below the above sum." (Rep.)

River Lumber Company on the common claim of the plaintiff."

The court erred in granting appellees' prayer for instruction No. 2, and in modifying appellant's prayer for instruction No. 5, and giving the same as modified. The effect of these rulings of the court was to declare, as a matter of law, that, if the president of the appellant told Sam Poe that the Fourche Company was a foreign corporation, then Poe was not negligent in having the mortgage filed for record in Saline County. The testimony of witnesses Lawson, Volman, and Spivey, on behalf of the appellant, tended to prove that the appellees were employed to draft for it a mortgage to be executed by the Fourche Company which would secure not only the existing indebtedness of that company to the appellant, but also any future advances made by the appellant to the Fourche Company. The testimony of these witnesses for the appellant tended to prove that the appellees undertook as a part of their contract of employment to file the mortgage so as to give the appellant a valid mortgage to cover any present or future indebtedness of the Fourche Company to appellant. Their testimony tended to prove that, after the mortgage had been filed by Poe in Saline County, a question was raised as to its validity by reason of the same being filed in Saline County, instead of Perry County, and that Poe, after being so advised, still persisted in saying that the mortgage was properly filed, and that he was taking care of it, and that he recognized the fact that it was his duty to protect the interests of the appellant in seeing that the mortgage was properly filed. There was testimony on behalf of the appellant tending to prove that, after the mortgage to the Central Supply Company had been filed, the appellees had the mortgage to appellant filed in Perry County and instituted for the appellant an action to foreclose the same. Under these circumstances, even though the president of the appellant did tell Sam Poe that the Fourche Company was a foreign corporation, it was still

a question for the jury to determine whether or not the appellees had exercised ordinary care to see that the mortgage to the appellant was filed in the proper county to give the appellant a superior lien over subsequent mortgages.

The facts which the appellant's testimony tended to prove would have warranted a finding, if the jury had been properly instructed, that it was a part of the appellees' contract with the appellant to see that the mortgage was properly filed, and, if such were the contract, the jury might have found that the appellees failed to exercise ordinary care to protect the interests of their clients, even though they were informed by its president that the Fourche Company was a foreign corporation. Whether or not such company was a foreign or domestic corporation depended upon whether such company had been incorporated under the law of a foreign state. The jury, under proper instructions, might have concluded that the appellees, as attorneys under their contract with the appellant, could not halt their investigation simply by being informed by its client that the Fourche Company was a foreign corporation. The jury might have found that the appellees, in the exercise of ordinary care, should have gone further and ascertained from the highest and best source, to wit, the public records, as to whether or not the Fourche Company was a foreign or domestic corporation.

The vice of the court's ruling was in singling out a particular phase of the evidence and telling the jury that, if the fact were established which this evidence tended to prove, it constituted a complete defense to the action; whereas, if the fact were proved which this testimony tended to establish, it was still only evidentiary, but not conclusive, that the appellees had exercised the ordinary care that the law requires of attorneys in such matters. The ruling of the court in this form was argumentative and ignored other phases of the testimony adduced by the appellant. It was still a question for the jury, after the

consideration of this, in connection with all the other testimony, to determine whether or not the appellees had fulfilled the requirements of the law by exercising ordinary care to protect the interests of their clients.

In the case of *Pennington* v. *Yell,* 11 Ark. 212, 227, Justice SCOTT, speaking for the court, said: "Reasonable diligence and skill constitute the measure of an attorney's engagement with his client. He is liable only for gross negligence or gross ignorance in the performance of his professional duties; and this is a question of fact to be determined by the jury, and is sometimes to be ascertained by the evidence of those who are conversant with and skilled in the same kind of business. These doctrines are sustained by all the authorities with unanimity and distinctness."

The authors of the Ruling Case Law announce the rule as follows: "The law implies a promise on the part of attorneys that they will execute the business intrusted to their professional management with a reasonable degree of care, skill and dispatch, and they are liable to an action if guilty of a default in either of these duties whereby their clients are injured.* * * An attorney in the management of his professional business is not bound to extraordinary diligence, but only to use a reasonable degree of care and skill, reference being had to the character of the business he undertakes to do, and is not to be answerable for every error or mistake, but, on the contrary, will be protected if he acts in good faith, to the best of his skill and knowledge, and with an ordinary degree of attention." 2 R. C. L. p. 1012, § 95.

And in 6 Corpus Juris, at page 696, it is stated: "An attorney must be held to undertake to use a reasonable degree of care and skill, and to possess to a reasonable extent the knowledge requisite to a proper performance of the duties of his profession. If injury results to the client as a proximate consequence of the want of such knowledge or skill, or from the failure to exercise such care, he must respond in damages to the extent of the injury sus-

tained by his client. This liability exists, even though the attorney acts gratuitously.'' Numerous cases are cited in notes to support the above texts. The exercise of reasonable and ordinary care upon the part of an attorney who contracts to perform services for his client means that he should use such skill, care and diligence as men of the legal profession commonly possess and exercise in matters of professional employment. 6 C. J. 698; *Evans* v. *Watrous,* 2 Port. 205; *Gambert* v. *Hart,* 44 Cal. 542; *Morrison* v. *Burnett,* 56 Ill. App. 129; *Lawall* v. *Groman,* 180 Pa. St. 532, s. c. 57 A. S. R. 662. Note to *Hill* v. *Mynatt,* 52 L. R. A. 884. Because the relation between an attorney and client is one of trust and confidence, our own court, in, *Pennington* v. *Yell, supra,* declared that the failure to exercise ordinary care as above defined on the part of an attorney is *crassa negligentia*—gross negligence. When our court declared that an attorney is liable only for gross negligence or gross ignorance in the performance of his professional duties, it was but tantamount to saying that an attorney is liable to his client for a failure to exercise ordinary care as above defined. 6 Corpus Juris, § 226; *Holmes* v. *Peck,* 1 R. I. 242; *Goodman* v. *Walker,* 30 Ala. 482, 495.

Now, as we have already stated, the testimony on behalf of the appellant would have warranted the jury in finding that the appellees expressly contracted with the appellant to have the mortgage properly recorded. The law on this subject is announced in 6 Corpus Juris at page 702, as follows: ''An attorney employed to prepare deeds, contracts, or other papers which are required to be registered in order to be effective as to third parties is not bound, in the absence of a special contract, to file such papers for recordation, or to see that they are recorded; that is no part of his duty as attorney, unless he has especially undertaken it. He may be liable, however, in cases where he has expressly contracted to attend to their being recorded, where the special circumstances are such as to raise the implication of such a contract

or where the record or registration is necessary to effectuate the purpose of his employment.'' See cases cited in note.

To be sure, the appellees were entitled to have the jury consider the testimony of Sam T. Poe tending to prove that he made inquiry of the president of the appellant as to whether the Fourche Company was a foreign or domestic corporation, and that the president replied that it was a foreign corporation. This testimony was relevant to the issue as to whether or not the appellees had exercised ordinary care in discharging their duty under their contract with the appellees, but, under the principles of law above announced, it was error for the court to declare as a matter of law that the appellees were not negligent and not liable if the president of appellant informed them that the Fourche Company was a foreign corporation. It was still an issue for the jury as to whether appellees had exercised ordinary care, as above defined, to protect the interests of their clients.

Likewise it was error for the court to declare as a matter of law that the facts as set forth in appellant's prayer for instruction No. 5, if true, constituted negligence. It should have been left for the jury to say whether these facts, if true, constituted negligence on the part of the appellees which rendered them liable.

The law was correctly declared in appellant's prayers for instructions numbered 2* and 6, the first of which the court granted and the latter of which refused. Appellant's prayer for instruction No. 7 was sufficiently covered in the instruction given by the court on its own motion.

The appellees' prayer for instruction No. 3, under the principles of law above announced, was not a correct declaration of law and should not have been given.

The court did not err in allowing the testimony of witness Sailor to go to the jury. This testimony was relevant on the issue as to the measure of damages,

because it tended to prove an accord and satisfaction of the debt for future advances. *Dreyfus* v. *Roberts,* 75 Ark. 354; *Lilly* v. *Verser,* 133 Ark. 553; *Collier Com. Co.* v. *Wright,* 165 Ark. 338, 345. Even if the appellees were negligent in failing to file the mortgage, there would be no damage to appellant if the debt for future advances had been settled by an accord and satisfaction.

For the errors indicated in the ruling of the court, the judgment is reversed, and the cause is remanded for a new trial.

---

*Appellant's prayer number 2 which was given by the court was. as follows:

"2. You are instructed that if you find from the testimony in this case that the plaintiff entered into an agreement with Sam T. Poe, one of the above named defendants, whereby it employed him for valuable consideration to prepare a chattel mortgage on certain property to be executed by the Fourche River Lumber Company to secure said plaintiff for certain indebtedness that then existed and to cover future advances to be made to the Fourche River Lumber Company by said plaintiff, and that, pursuant to said contract of employment, defendant, Sam T. Poe, entered upon said engagement and prepared said mortgage, and that he undertook, in connection with said employment, to file said mortgage, so as to make it a valid lien upon the property covered by said mortgage and that said mortgage was by him negligently filed in the wrong county, which rendered the lien supposed to be created thereby invalid, and as a result of the negligence, if any, of said defendant in filing said mortgage in the wrong county plaintiff was damaged, your verdict will be for the plaintiff."