**Judith G. (Nylund) JARNAGIN, Appellant,**

v.

**Jack C. TERRY (Third Party Plaintiff) Respondent,**

v.

**Donald NYLUND (Third Party Defendant).**

**No. WD 41971.**

Missouri Court of Appeals, Western District.

April 16, 1991.

John Gregory Dorsey, North Kansas City, for appellant.

John J. Phillips, Independence, for respondent.

Before ULRICH, P.J., and SHANGLER and TURNAGE, JJ.

SHANGLER, Judge.

The plaintiff Jarnagin appeals the judgment by directed verdict entered by the trial court in favor of the defendant Terry at the conclusion of the plaintiff's case. The trial court understood the petition as a pleading by a client to recover damages for lawyer negligence, determined that the plaintiff failed to prove a submissible claim, and directed a verdict in favor of the defendant lawyer. The trial court concluded that without expert testimony as to the standard of performance required of Terry, that his conduct constituted a breach of that duty, and that the negligence caused her damages, the claim was not proven *prima facie*. The trial court aptly reasoned that in a claim of malpractice for lawyer negligence, the client bears the burden to prove, not only a subsistent lawyer-client relationship, but also that the lawyer failed to exercise ordinary skill and knowledge, and that the lawyer's negligence caused damage to the client, and its measure. *Gabbert v. Evans*, 184 Mo.App.283, 166 S.W. 635, 638[10] (1914); *Cain v. Hershewe*, 760 S.W.2d 146, 149[6,7] (Mo.App. 1988). The court also aptly noted the usual rule that in such a claim, the client may prove the negligence of the lawyer only by expert testimony that the lawyer did not exercise ordinary professional skill in the circumstances. *Cooper v. Simon*, 719 S.W.2d 463, 465 (Mo.App.1986), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3194, 96 L.Ed.2d 681 (1987); *Gabbert v. Evans*, 166 S.W. at 638.

The petition of the client, Judith Jarnagin [then, Nylund], however, does not seek to recover damages caused by the negligence of the lawyer, Terry, in the discharge of his professional duty to her. The petition, rather, effectively pleads her instruction to Terry to include as a term of the division of the marital property, and to secure the judgment of the court, that the marital debt to the Standard State Bank be made the obligation of the husband. It pleads the agreement of her lawyer, Terry, to this instruction. It pleads also the failure of lawyer Terry to follow the instruction as agreed, and the damage caused from that breach of promise. That was also the intimation in the opening statement of the evidence to come, and that was the evidence that actually came.

The lawyer error the claim of the petition alleges and the evidence proves, therefore, was not lawyer negligence, but the failure of the lawyer to follow the instructions of the client. It rests on principles of contract measured by rules of agency, and not of tort measured by a standard of care. 2 R. Mallen & J. Smith, *Legal Malpractice* § 27.15, p. 673 (1989). As such, the duty owed by the lawyer to the client is not that as established by the legal profession, but by the law of agency. *Olfe v. Gordon*, 93 Wis.2d 173, 286 N.W.2d 573, 578[5, 6] (1980). The testimony of an expert was not necessary to prove that the species of lawyer error the Jarnagin petition pleaded and the evidence sustained constituted a breach of a professional standard of performance. *Id.; McInnis v. Hyatt Legal Clinics*, 10 Ohio St.3d 112, 461 N.E.2d 1295, 1297[2] (1984); *Asphalt Engrs., Inc. v. Galusha*, 160 Ariz. 134, 770 P.2d 1180, 1182[3] (1989). In such a case, also, the flow of damages to the client, as well as the breach of the professional duty, are subjects of common understanding of jurors. *McInnis v. Hyatt Legal Clinics*, 461 N.E.2d at 1297; *Olfe v. Gordon*, 286 N.W.2d at 577[2–4].

The entry of a directed verdict for the defendant lawyer by the trial court because there was no expert evidence that the lawyer error constituted a breach of a professional standard of care or caused damage to the client improperly deprived the plaintiff of the legitimate intendments of her evidence and her right to submit her claim

to the jury. *In re Estate of Mapes,* 738 S.W.2d 853, 855[4, 5] (Mo. banc 1987).

Accordingly, we reverse the judgment and remand the proceedings with directions.

The evidence considered in the light most favorable to the plaintiff's case shows that the Nylunds [she, now Jarnagin] had decided to dissolve their marriage. They settled on the defendant Terry, whom the husband had already consulted, as the lawyer for that purpose. The husband was a truck driver and frequently away, so the wife met with Terry, and Terry agreed to represent her in the dissolution proceeding. The husband and wife had agreed upon the marital assets and debts, the division to be made of the assets, and the provision as to the payment of the debts, and listed them. Terry had already seen the list from the husband on that visit to the office before Terry formally undertook the representation of the wife. The list was prepared and signed by the wife and was her instruction to Terry as to the division to be made of the marital assets and of the allocation of the marital debts, as already agreed upon between the husband and wife. It was dated August 20, 1980. The document was delivered to Terry by the husband on the occasion of that first consultation.

The major assets on the list were two real properties acquired by them during the marriage: the residence and a farm. The residence was encumbered by a first and second mortgage. The first mortgage, a purchase money encumbrance, secured an indebtedness to J.B. Nutter. The second, secured an indebtedness to Standard State Bank, the proceeds of which were used by them for the farm. The farm was subject to a mortgage in favor of the Jameses, from whom they purchased the property.

The agreement between the spouses was that the residence was to be set over to the wife and that she would assume the first mortgage, the indebtedness to Nutter. The farm was to be set over to the husband and he would assume the second mortgage on the house, the indebtedness to Standard State Bank, since those proceeds were used for the farm. The existing mortgage on the farm payable to the Jameses was also to be the obligation of the husband. The wife gave those instructions to Terry, and they were repeated to him by the Nylunds at every visit thereafter.

Terry acknowledged that the list composed by the wife and delivered to him by the husband included the debt to Standard State Bank "under the portion that [the husband] was to receive or accept responsibility for." Terry noted there on the document in his own hand: "Second mortgage, Standard State Bank, $10,000. Each party to pay one-half attorney's fees." Terry understood from the husband that the Standard State Bank debt was against the farm. There was no question in his mind, however, that "Mr. Nylund was to pay it."

Terry then met with the wife on September 4, 1980, and on September 9, drew up a Property Settlement Agreement. It was for the purpose of client review, to confirm that the document "met with what they told me, you know, to include in their property settlement agreement." That document included the provision: "Husband agrees to assume the following obligations and to pay the same and keep them current until paid in full: ... second note and deed of trust at Standard State Bank in the amount of $10,000 with monthly payments of $187 per month." The document was never signed by the husband and wife.

The dissolution hearing was held on April 24, 1981. Terry prepared a "Statement of Marital and Nonmarital Property Income and Expenses" for that court occasion. That document incorrectly described the debt owed to Standard State Bank as an encumbrance on the farm property. Terry also prepared a judgment entry and the court adjudicated the property rights of the Nylunds according to the terms as submitted. That document recited: *"That the parties hereto had, prior to the entry of this Judgment been unable to agree to any physical division of all personal and real property in which either party hereto has an interest and therefore, the Court, makes the following division of said personal property and real property as follows:"* [emphasis added]. One of

those terms adjudged to the husband the right title and interest in the farm property and ordered the husband to "assume any and all indebtedness" existing against the farm. The judgment entry made no mention of the debt owed to Standard State Bank, or the obligation of the husband to assume it.

The husband made one payment due Standard State Bank, then noticed that the judgment did not obligate him to discharge that indebtness, and refused to make further payment. He credited the amount already remitted against the child support payment imposed upon him by the judgment. The wife promptly consulted Terry who assured her that the husband was in error, that the judgment was against him, and "he's got to pay it." He advised her not to make any payments on the debt. Terry wrote to the husband that under the divorce decree he was liable for the Standard State Bank debt. The husband did not accede. Terry sought compliance by a citation for contempt, but was not successful. To prevent foreclosure of the mortgage against the residence, the wife paid the debt of $16,131.08, principal and interest, to Standard State Bank.

The suit by the wife against Terry to recover those damages was commenced. Terry brought a third-party against the husband Nylund as third-party defendant for contribution. At the close of the wife's case, Terry moved for a directed verdict because the wife failed to establish by expert testimony the standard of care owed by him and that any breach of that standard was the cause of her damages. The court sustained the motion, entered judgment for Terry on the petition of the wife, and dismissed the third-party petition against the husband.

There was an ambivalence throughout the trial, in the rulings on objections to evidence, and at the last, on the motion for directed verdict, as to the nature of the lawyer error that the wife claimed. The objections of counsel for Terry and the husband, and the rulings of the court, and the comments of both counsel and the court, disposed the principals to the understanding that the claim would not be submitted in the absence of expert evidence. The wife presented Terry as a witness and, in evident response to the rulings of the court, undertook to elicit from the witness the standard of care that governed his conduct and the admission that he committed a breach of that duty to her. Terry's counsel objected, not because Terry was not an expert, but that such testimony was not relevant—because "your pleadings do not sound in negligence at all." Then, on the motion for directed verdict, counsel for Terry once again argued to the court that a negligence submission was precluded by the pleadings as well as the nature of the claim of lawyer error the wife was litigating: "But part of the problem with this whole case is, if the Court will look at the petition the Court will see that *negligence was never pleaded in the first instance*, which is why it's been so difficult for me dealing with this case and talking about standards of care and expert witnesses. *All the petition says was that Mr. Terry agreed to secure a judgment and he failed to do so, and those are the only words of action in the entire pleading. Now, the point I'm making is not only is it not really a negligence action ... it appears to sound in breach of contract.*" [1] [Emphasis added]

◼ In general principle, the relationship of lawyer and client is contractual. *In re Schneider*, 294 S.W. 736, 738[1, 2] (Mo.App. 1927). It is also a relation of agency, and its general contours are governed by the same rules. *Henderson v. Cape Trading*

---

1. That the claim pleaded by the wife was palpably a species of breach of contract, and was so understood by Terry, is evident from his Motion to Join Third-Party Defendant:

    1. That plaintiff in this case against defendant, Jack C. Terry, alleges that *Jack C. Terry* was her attorney, representing her in an action for dissolution of marriage and as such *was instructed by plaintiff* to obtain as a part of the dissolution decree an order compelling her then husband, Don Nylund, third-party defendant, to pay the entire balance on a certain promissory note which was secured by a deed of trust on the family home which awarded plaintiff under said decree. [Emphasis added].

194

*Co.*, 316 Mo. 384, 289 S.W. 332, 334[9] (1926). It is, nevertheless, distinguished from other types of agency by its highly fiduciary quality and by the limit of its scope—particularly where the lawyer is employed for a definite purpose unrelated to litigation in court. *Erickson v. Civic Plaza Nat'l Bank of Kansas City,* 422 S.W.2d 373, 378[2] (Mo.App.1967).

An agent is bound to obey the specific instructions of the principal and to follow them faithfully, where the agent has undertaken to perform them, unless prevented by unavoidable accident or unless the instructions require the doing of an immoral or illegal act. *Rechtscherd v. Accomodation Bank of St. Louis,* 47 Mo. 181, 184 (1870). An agent becomes responsible for the full loss caused by any violation of that duty, either in exceeding or disregarding the instructions. *Switzer v. Connett,* 11 Mo. 88, 93 (1847). A lawyer under instructions from a client to perform a certain task or in a specified manner acts as agent to principal, and owes the duty of an agent to obey the reasonable instructions and directions of the principal. Restatement (Second) of Agency § 385 (1958); *Cultum v. Heritage House Realtors,* 103 Wash.2d 623, 694 P.2d 630, 636[9–11] (banc 1985).

An agent is subject to liability for loss caused to the principal by any breach of duty. Restatement (Second) of Agency § 401 (1958). If the only basis for the action is the promise of the agent to act, the principal has only an action on contract for breach of the promise. *Id.* comment a. In such a case, negligence is not an issue, and is irrelevant to the question of a breach. Where the client instructs the lawyer to perform certain tasks or to act in a specific manner, the undertaking is contractual. The failure to follow the directions results in liability by the lawyer for all damages resulting to the client. 2 R. Mallen & Smith, *Legal Malpractice* § 8.7 (1989); *Cultum v. Heritage House Realtors, Inc.,* 694 P.2d at 636[10, 11]; *McInnis v. Hyatt Legal Clinics,* 461 N.E.2d at 1297[2]; *W.L. Douglas Shoe Co. v. Rollwage,* 187 Ark. 1084, 63 S.W.2d 841,

843[2, 3] (1933); *Ramage v. Cohn,* 124 Pa. Super. 525, 189 A. 496, 497[1] (1937); *McCoy v. Hydrick,* 143 S.C. 135, 141 S.E. 174, 177[2, 3] (1928). The ground of the action is not that the client was damaged by the lack of legal expertise of the lawyer, but that the lawyer did not follow the direction of the client, so that expert testimony is not needed to prove that the agent committed a breach of duty to the principal. *Olfe v. Gordon,* 286 N.W.2d at 578; *Asphalt Engrs., Inc. v. Galusha,* 770 P.2d at 1182[3]; 2 R. Mallen & Smith, *Legal Malpractice* § 27.15, p. 673 (1989).

The evidence shows that the Nylund couple, in contemplation of dissolution of marriage, agreed upon a definitive disposition of the marital assets and the apportionment of the marital debts. A term of that agreement was that they had acquired two tracts of property during the marriage, the residence and the farm. The residence was to be set over to the wife and the farm, to the husband. It was agreed also that the residence was subject to two mortgages, the first to Nutter and the second to Standard State Bank. The farm was subject to a mortgage in favor of the Jameses. The wife was to assume the first mortgage to Nutter, and the husband was to assume the second mortgage to Standard State Bank. The husband was to assume the mortgage on the farm to the Jameses. The intendments of the evidence most favorable to the petition of the wife show that these dispositions of property and allocations of debts were explained exactly to lawyer Terry, first by the husband, and then repeatedly by the wife and that he was instructed specially by the client wife to give that and the other terms legal effect. Terry acknowledged that there was no question in his mind that the agreement—and the direction to him—was that the husband Nylund was to pay the Standard State Bank indebtedness.

The evidence was that, not only did Terry not follow those instructions, he repudiated them. The judgment entry which he drew up, and by which the court adjudicated the rights and liabilities of the husband and wife upon dissolution of the marriage, in-

formed the court that the parties were unable to agree to the division of their property. It was upon that express premise that the court undertook the division. The evidence was, rather, that not only were the parties in full agreement, but that the client imparted the precise terms of agreement to Terry, that Terry undertook to give expression to them in the Property Settlement Agreement, but that he thereafter simply failed to ensure the terms of legal effect either as a separation agreement between the husband and wife or as a separation agreement incorporated in the decree of dissolution. § 452.325, RSMo 1986; *In re Marriage of Wilfong,* 658 S.W.2d 45, 48[8–9] (Mo.App.1983). The evidence was also that the client wife was damaged $16,131.08 by the failure of lawyer Terry to faithfully follow her instructions.

The judgment is reversed and the proceedings are remanded for retrial with the direction to reinstate the petition of third-party plaintiff Terry against third-party defendant Donald Nylund.

All Concur.