2016 PA Super 263

| | |
|---|---|
| JAMES HELDRING, INDIVIDUALLY AND ON BEHALF OF PENCOYD IRON WORKS, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| LUNDY BELDECOS & MILBY, P.C. AND ERIC C. MILBY, ESQ. | |
| Appellees | No. 397 EDA 2016 |

Appeal from the Order Entered January 13, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 150502532

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

OPINION BY SOLANO, J.:                    **FILED NOVEMBER 28, 2016**

Plaintiffs-Appellants Pencoyd Iron Works, Inc. and James Heldring, Pencoyd's owner and founder, appeal from the trial court's January 13, 2016 order dismissing their complaint for legal malpractice and unjust enrichment. We affirm the dismissal of all claims brought by Mr. Heldring individually and the dismissal of Pencoyd's unjust enrichment claim, reverse the dismissal of Pencoyd's claim for legal malpractice, and remand for further proceedings consistent with this opinion.

### The Underlying Case

This case arises from litigation pertaining to a construction dispute. In September 2005, Pencoyd won a bid to supply steel to be used in the conversion of a building at 1101 Washington Avenue in Philadelphia into

condominiums. The building was owned by 1101 Washington Associates, L.P. ("Washington Associates"). Am. Compl., at ¶ 5.[1] Washington Associates hired Axis Construction Services, LLC,[2] to serve as its general contractor, and Axis contracted with Pencoyd to perform structural steel fabrication and to install rails, stairs, and lintels. *Id.* at ¶ 6.

When Axis failed to make timely payments for the steel, Pencoyd stopped work. Am. Compl., at ¶ 11. Pencoyd resumed work only after David Grasso, who is identified in the amended complaint as "President of Grasso Holdings Acquisitions, LLC doing business as Grasso Holdings, principal of GH Property Services, Inc. and a partner of [Washington Associates]," promised to pay Pencoyd and the other subcontractors and arranged for additional project financing. *Id.* at ¶ 12. GH Property Services, Inc. ("GH Property") took over day-to-day management of the project, but, when the project was completed, Pencoyd claimed it still was owed a balance of $130,953.50 for its work. Am. Compl., at ¶¶ 14-17, 19.

To collect that outstanding balance, Pencoyd retained Eric Milby, Esquire, of the law firm now known as Lundy, Beldecos & Milby, P.C. Am. Compl., ¶¶ 3, 20-37. The retention is reflected in a letter agreement dated

---

[1] As this action was dismissed by the trial court on preliminary objections, we base the facts on the amended complaint, including its exhibits. *See Albert v. Erie Ins. Exch.,* 65 A.3d 923, 928 (Pa. Super. 2013).

[2] Axis Construction Services, LLC is also known as Axis Construction Management.

August 21, 2009. ***Id.***, Ex. "A," at 1, 3. That letter was from Attorney Milby and addressed to "Pencoyd Iron Works, Inc., Attn: James Heldring, President," and it stated that Attorney Milby would engage in "proceedings to collect monies owed to Pencoyd." ***Id.***, Ex. "A," at 1. The letter agreement was signed by Attorney Milby and by Mr. Heldring as Pencoyd's president. ***Id.***, Ex. "A," at 3.

Attorney Milby filed a collection action on behalf of Pencoyd in the Court of Common Pleas of Philadelphia County. Am. Compl., ¶ 30, Ex. "B."[3] The named defendants included Axis and an entity identified in the caption of the complaint as "Grasso Holdings" and in the body of the complaint as "Grasso Holdings Acquisitions, LLC." The complaint did not name as defendants David Grasso, GH Property, or any other entity owned or operated by David Grasso.

During the course of the proceedings, summary judgment was entered in favor of Axis. Am. Compl., ¶ 45, Ex. "C." Following a bench trial, the trial court found in favor of Pencoyd and against Grasso Holdings in the amount of $130,950.00. ***Id.***, Ex. "C" & "D" (Findings of Fact and Conclusions of Law, at 11 ¶ 72). Relevant to this appeal, in Findings of Fact and Conclusions of Law dated September 11, 2012, the trial court stated the following:

---

[3] The action was captioned, ***Pencoyd Iron Works v. Axis Construction Services, LLC, et al.***, March Term, 2010, No. 00814 (C.P. Phila.).

1. David Grasso ("Grasso") is the President of the general partnership entity, Grasso Holdings, L.P. ("Grasso Holdings"), the CEO of GH Property Services, Inc. ("GH Property Services"), and a partner in [Washington Associates]. . . .

5. On the Grasso Holdings website, Grasso Holdings purports to own the [condominium] Project. . . .

22. . . . David Grasso personally guaranteed the debt on the Project as the President of Grasso Holdings and the partner of [Washington Associates]. . . .

25. After the subcontractors ceased work, Axis indicated that they were going to walk away from the Project.

26. In response David Grasso decided to hire GH Property Services, an affiliate business, to "handle some of the responsibilities" because people were already living in the building and buyers were waiting to move in.

27. GH Property Services took over the day to day management of the Project. . . .

57. On the Grasso Holdings website they state, "Grasso Holdings, through its affiliates, provides brokerage and property management services for many of the properties that it develops."

58. Moreover, the Grasso Holdings website states that David Grasso is the President, CEO, and primary principal of Grasso Holdings and that Grasso Holdings is the owner of the [condominium project].

59. David Grasso personally guaranteed the construction loan to recommence the project. . . .

61. Thus, there was substantial intermingling of corporate affairs which makes it apparent that Grasso Holdings was in charge of the Project and [Washington Associates] was a layering company in order for Grasso Holdings to avoid liability. . . .

65. Grasso Holdings did not pay Pencoyd for their completed work and thus Grasso Holdings was unjustly enriched. . . .

69. Grasso Holdings . . . assured Pencoyd that it would be paid up to current and in the future be paid 15 days after receipt of an invoice.

70. Pencoyd returned to work after leaving the job for lack of payment and completed their work on the project.

71. Grasso Holdings assumed the contract with Pencoyd so that Grasso Holdings could finish and sell the unsold units, comply with current residents, and pay off the debts that David Grasso had personally guaranteed.

72. A finding is entered in favor of the plaintiff, Pencoyd Ironworks, Inc. and against defendant, Grasso Holdings, in the amount of $130,950.00.

Am. Compl., Ex. "D" (Findings of Fact and Conclusions of Law, at 2-5, 8-11) (citations omitted).[4] Grasso Holdings Acquisitions, LLC, filed an appeal to this Court (No. 2874 EDA 2012), which we dismissed on November 20, 2012, because no post-trial motion had been filed.

On May 17, 2013, Attorney Milby, on behalf of Pencoyd, praeciped for entry of judgment against "Grasso Holdings." According to Pencoyd, when Attorney Milby took David Grasso's deposition, he realized that "Grasso Holdings" is a mere trade name and not a legal entity. Am. Compl., ¶ 36. Attorney Milby then tried to amend the judgment by filing a motion for "clarification" that asked that the judgment apply to the following Grasso affiliates: GH Property Services; GH Realty Services LLC, GH Realty, LLC,

_____

[4] The court initially entered its finding against "David Grasso Holdings." It later amended the finding to be against "Grasso Holdings." Am. Compl., Ex. "C."

GH Property Management, LLC, GH Management, and Metro Development Real Estate Fund, L.P. *Id.* ¶ 53.[5] The trial court denied the motion for clarification, stating:

> On June 25, 2012, this court held a bench trial in which the parties presented evidence and this court made credibility determinations. Subsequent to the trial, both parties submitted proposed findings of fact and proposed conclusions of law. On September 11, 2012, this court entered judgment in favor of plaintiff, Pencoyd Iron Works, and issued findings of fact and conclusions of law to support the judgment. Moreover, on September 18, 2012, this court issued an amended order to correct the name of defendant to Grasso Holdings. Neither party filed motions for reconsideration nor did either party file post-trial motions. On October 12, 2012, defendant, Grasso Holdings, appealed to the Superior Court of Pennsylvania but the appeal was subsequently dismissed as defendant failed to file post-trial motions. Plaintiff, more than eight months after the entry of judgment, requests this court to clarify its judgment by changing its factual determinations regarding the entities sued by plaintiff and to sanction David Grasso. Essentially, plaintiff requests the court to reexamine the evidence and further reconsider the judgment entered. Obviously, the court cannot do so and this motion must be denied. *See* Pa.R.C.P. 227.1. *See also* 42 Pa.C.S.A. § 5505.

Am. Compl., Ex. "E" (Order denying motion for clarification, dated June 13, 2013, at 1 n.1).

_____

[5] According to Appellants' Brief at 13, the motion also sought sanctions against David Grasso, but that information is not in the amended complaint. The motion for clarification itself is not in the certified record.

**The Current Litigation**

On May 21, 2015, "James Heldring, individually and on behalf of Pencoyd Iron Works, Inc.,"[6] commenced this action by writ of summons against Attorney Milby and the Lundy law firm. In an amended complaint, Mr. Heldring and Pencoyd alleged that Attorney Milby and his firm "were negligent and careless in their pre-litigation investigation and due diligence because they did not name the correct Grasso entity or any of the various legal entities owned or controlled by David Grasso, as 'Grasso Holdings' is a simple trade name used by several entities." Am. Compl., at ¶ 31. They averred, "The correct name of the Grasso entity whom the Defendants should have sued on plaintiff, Pencoyd's behalf was GH Property Services, Inc." *Id.* at ¶ 33. Mr. Heldring and Pencoyd alleged that, by filing the complaint against "Grasso Holdings," Attorney Milby impaired their ability to collect on the judgment secured in the underlying action:

> On February 7, 2013, Milby prepared and filed a praecipe for Judgment against the trade name "*Grasso Holdings*". Judgment against a trade name is problematic from a post-crash judgment and enforcement standpoint, and a Pennsylvania lawyer, exercising ordinary skill and knowledge, would not expect there to be any assets titled to the name "*Grasso Holdings*".

---

[6] The reason Plaintiffs styled the caption in this way is not explained. The body of the amended complaint lists Mr. Heldring and Pencoyd as separate plaintiffs, *see* Am. Compl. ¶¶ 1-2, and throughout the litigation, the trial court and the parties treated the case as being brought by Mr. Heldring and Pencoyd as separate plaintiffs. We address the case with that same understanding.

*Id.* at ¶ 39. They asserted that, as a result, "Pencoyd has been unable to collect even a single dollar from the worthless judgment obtained." *Id.* at ¶ 58. The complaint sought damages for legal malpractice (in counts alleging negligence and breach of contract) and unjust enrichment. *Id.* at ¶¶ 59-74.

In response to the amended complaint, Attorney Milby and his law firm filed preliminary objections in the nature of a demurrer. They asserted that, as "it has already been judicially establish[ed] that [] Defendants sued the correct party in the Underlying Matter, [] Defendants cannot be deemed to have breached a duty of care owed to Pencoyd." Defs.' Prelim. Objections To Pls.' Am. Compl., at 8-9 ¶ 30. They sought dismissal of the unjust enrichment claim "because [the parties'] relationship arises from an actual contractual agreement," *id.* at 10 ¶ 45, and asserted that Mr. Heldring could not recover because he was not a party to the contract for retention of their legal services, *id.* at 3-4 ¶¶ 7-9, 13.

In an order dated January 13, 2016, the trial court sustained the preliminary objections and dismissed the amended complaint. The court explained:

> Plaintiffs have filed the instant action, which asserts legal malpractice and unjust enrichment claims, against defendants based upon defendant[s'] representation of Pencoyd Iron Workers, Inc. ("Pencoyd") in the matter of ***Pencoyd Iron Workers. Inc. v. Axis Construction Services, LLC et al.***, March Term, 2010, No. 0814. Following a bench trial, the court held Grasso Holdings to be liable to Pencoyd, and entered judgment in favor of Pencoyd in the amount of $130,950.00. Neither party filed motions for reconsideration nor did either party file post-trial motions. Eight months after the entry of

judgment, Pencoyd filed a "motion for clarification," which was denied. Pencoyd claims it has since been unable to recover the judgment because Grasso Holdings is [] merely a fictitious trade name that does not own assets.

In order to establish a legal malpractice claim in either contract or tort, the plaintiff must establish actual loss. ***See Rizzo v. Haines***, 555 A.2d 58, 68 (Pa. 1989). "Actual losses in a legal malpractice action are measured by the judgment the plaintiff lost in the underlying action and the attorney who negligently handled the underlying action is the party held responsible for the lost judgment." ***Kituskie v. Corbman***, 714 A.2d 1027, 1030 (Pa. 1998). Here, defendants successfully obtained a judgment in favor of its client, Pencoyd, in the underlying action. The underlying action did not result in a loss to plaintiffs. The court has already concluded that Grasso Holdings is liable to Pencoyd, and as a result, Pencoyd is not entitled to re-litigate the matter in order to recover from a more solvent party. Furthermore, defendants represented the company Pencoyd; there was no contractual relationship between defendants and Heldring individually. Therefore, Heldring's claims against defendants for legal malpractice and unjust enrichment fail as a matter of law. Defendants' demurrers are sustained

1/13/16 Order, at 1-2 n.1 (citations to pleadings omitted). Mr. Heldring and

Pencoyd then timely filed this appeal.

## Issues and Standard of Review

Appellants raise the following issues:

1. Is a legal malpractice action against an attorney who recovered a judgment against an impecunious fictitious name barred

    a. by the doctrine of collateral estoppel? or

    b. by the proposition that so long as an attorney secures a judgment—no matter how worthless—then he has done his duty, and no malpractice action can lie against him?

2.    Did the company president, as an individual, have with the attorney defendants a contractual relationship that would permit him to file a legal malpractice action against them?

Appellants' Brief at 5 ¶¶ 1-2.

In considering an appeal from an order granting preliminary objections in the nature of a demurrer, which is a question of law, our standard of review is *de novo* and our scope of review is plenary. ***Mazur v. Trinity Area Sch. Dist.,*** 961 A.2d 96, 101 (Pa. 2008).

> The court may sustain preliminary objections only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief. For the purpose of evaluating the legal sufficiency of the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts.

***Id. Accord Frank v. TeWinkle***, 45 A.3d 434, 438 (Pa. Super. 2012).

**Dismissal of Claims by Mr. Heldring**

We begin with the second question presented, which addresses the trial court's dismissal of the claims made individually by Mr. Heldring.

As noted above, the trial court dismissed Mr. Heldring's malpractice claim because "defendants represented the company Pencoyd; there was no contractual relationship between defendants and Heldring individually." 1/13/16 Order, at 2 n.1. We agree. The threshold element of any legal malpractice claim, whether brought in contract or tort, is the existence of an attorney-client relationship. ***McHugh v. Litvin, Blumberg, Matusow & Young***, 574 A.2d 1040, 1042 (Pa. 1990). The letter of retention from

- 10 -

Attorney Milby and his firm, dated August 21, 2009, is addressed to Pencoyd, with "Attn:" to Mr. Heldring as Pencoyd's president. Nowhere does the letter state that the firm would represent Mr. Heldring personally, and, in accordance with the instructions set forth in the letter, the letter was executed (and consequently transformed into an agreement) by Mr. Heldring only as president of Pencoyd, and not in an individual capacity. Additionally, when suit was filed by Attorney Milby, only Pencoyd was named as the plaintiff. We thereby agree with the trial court that Mr. Heldring failed to establish an attorney-client or other contractual relationship between himself and Attorney Milby that would enable him to recover for malpractice.

Similarly, nowhere does Mr. Heldring set forth a relationship between himself and the Defendants or allege any personal payment by him to Defendants that would give rise to a claim for unjust enrichment. Accordingly, we affirm the dismissal of all claims asserted by Mr. Heldring.

**Dismissal of Pencoyd's Legal Malpractice Claim**

The elements of a claim for legal malpractice are:

1. The employment of the attorney or other basis for duty;

2. The failure of the attorney to exercise ordinary skill and knowledge; and

3. That such negligence was the proximate cause of damage to the plaintiff.

***Rizzo v. Haines***, 555 A.2d 58, 65 (Pa. 1989). The Supreme Court of Pennsylvania has described the unique nature of a legal malpractice claim:

> [A] legal malpractice action is distinctly different from any other type of lawsuit brought in the Commonwealth. A legal malpractice action is different because . . . a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have recovered a judgment in the underlying action. . . . It is only after the plaintiff proves he would have recovered a judgment in the underlying action that the plaintiff can then proceed with proof that the attorney he engaged to prosecute or defend the underlying action was negligent in the handling of the underlying action and that negligence was the proximate cause of the plaintiff's loss since it prevented the plaintiff from being properly compensated for his loss.

*Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998) (footnote omitted).

Therefore, an important question in a legal malpractice action is whether the plaintiff "had a viable cause of action ***against the party he wished to sue*** in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case')." ***Poole v. W.C.A.B. (Warehouse Club, Inc.)***, 810 A.2d 1182, 1184 (Pa. 2002) (emphasis added).

Here, Pencoyd alleges that the underlying lawsuit, if properly framed by Attorney Milby and his firm, would have been filed on Pencoyd's behalf against GH Property, rather than against "Grasso Holdings." Although the issue does not seem to arise frequently, we conclude that, upon proper proof, failure to sue the correct party may be a viable basis for a legal malpractice cause of action and that Pencoyd should have been permitted to proceed on that theory.

Initially, the Supreme Court's decision in **Poole** provides some limited guidance. Poole received worker's compensation benefits from his employer for a slip-and-fall injury that occurred during the course of his employment. He also attempted to sue the owner of the property where his fall occurred, but his lawyer sued the wrong party and that suit was dismissed. Because the statute of limitations had run, Poole was unable to file a new action against the correct party. 810 A.2d at 1182. Poole then "filed a civil complaint against his former legal counsel alleging that former counsel had been negligent in his representation" by suing the wrong party. **Id.** Poole and his former lawyer settled that case, and Poole's employer then sought reimbursement of its worker's compensation payments from those settlement proceeds. **Id.** at 1182-83.

The direct question before the Supreme Court in **Poole** was whether proceeds from a legal malpractice action are subject to subrogation under the Workers' Compensation Act, an issue that the Court ultimately answered affirmatively. **See** 810 A.2d at 1182-83, 1185. Although the Court was not asked to decide whether a viable legal malpractice action may be brought against an attorney who sued the wrong party in an underlying case — the issue before us here — the Supreme Court never questioned the viability of such a malpractice claim. **See id.** at 1182, 1184-85. In fact, the Court implicitly recognized the validity of such a claim by the penultimate sentence in its opinion: "while the underlying tortfeasor may have escaped liability

due to the statute of limitations and the actions of employee's previous counsel, the legal malpractice action places this liability on the proper party." *Id.* at 1185.

Courts in other jurisdictions have more directly held that a viable malpractice action may be brought against a lawyer who sued the incorrect party. *See, e.g.*, *Cosgrove v. Grimes*, 774 S.W.2d 662, 663-65 (Tex. 1989) (client was entitled to recover against attorney for malpractice in pursuing personal injury action, where the attorney filed suit against the wrong defendant); *Bricker v. Kay*, 446 So.2d 1151, 1152 (Fla. App. 1984) (allegation that attorney named wrong defendant in client's action, resulting in dismissal of complaint with prejudice after expiration of time within which suit could commence, was sufficient to state claim for malpractice, and the complaint should not have been dismissed); *Young v. Jones*, 256 S.E.2d 58 (Ga. App. 1979) (attorney held liable to former clients for malpractice in negligently handling personal injury case against a railroad, because she sued the wrong railroad company and did not amend the complaint before the statute of limitations had run). We recognize that "we are not bound by these cases; however, we may use them for guidance to the degree we find them useful and not incompatible with Pennsylvania law." *Trach v. Fellin*, 817 A.2d 1102, 1115 (Pa. Super. 2003) (*en banc*) (citations omitted).

Pencoyd alleges that it retained Attorney Milby and his firm to collect the money it was owed for its steel fabrication work. *See* Am. Compl., ¶¶

20-37. It alleges further that Attorney Milby and his firm were negligent in failing to sue David Grasso and companies owed or affiliated with him that were liable on that debt — particularly, GH Property — and that they were negligent when they instead sued only Grasso Holdings, which is merely a trade name against which they cannot recover on a judgment. *Id.* ¶¶ 30-31, 33, 39, 58 & Ex. "B." Finally, Pencoyd alleges that this negligence caused it damage because it has been unable to collect the amount owed to it, even though it now has a judgment against Grasso Holdings. *Id.* ¶ 58. These allegations are sufficient to state a claim for legal malpractice.

The trial court held that Pencoyd's theory of recovery is not valid because a viable malpractice action requires proof that the lawyer's negligence caused damage to the plaintiff, *see Rizzo*, 555 A.2d at 65, and, in the trial court's view, Pencoyd did not suffer damage. The court explained: "The underlying action did not result in a loss to [Pencoyd]. The court has already concluded that Grasso Holdings is liable to Pencoyd, and, as a result, Pencoyd is not entitled to re-litigate the matter in order to recover from a more solvent party." 1/13/16 Order, at 2 n.1. Pencoyd responds, however, that the judgment it obtained from Grasso Holdings "was worthless." Appellants' Brief at 29. Pencoyd vigorously asserts that the fact Attorney Milby sued an entity against which a recoverable judgment could not be obtained cannot be a valid defense against Attorney Milby's failure to sue a different liable party that is able to pay a judgment. Pencoyd

argues that it was Attorney Milby's responsibility to investigate and to identify a proper solvent party to sue so that any judgment obtained would then be collectible, and Pencoyd argues that it should be allowed to pursue this theory of recovery at trial. *Id.* at 23. Neither party has presented us with any authority addressing a fact pattern like this one, but, after careful consideration, we agree that Pencoyd's claim based on this theory of recovery is not dismissible as a matter of law.

In a different context, the Supreme Court held in *Kituskie*, 714 A.2d 1027, that collectability of damages is an appropriate issue for consideration in a malpractice trial. The lawyer in *Kituskie* failed to sue the party responsible for his client's personal injuries before the statute of limitations had run. In the resulting malpractice action, a jury awarded the plaintiff $2.3 million. On appeal, the lawyer contended that the jury should have been asked to consider whether the damages should have been reduced, because it was unlikely that their full amount could have been collected from the defendant. Answering that question affirmatively, the Supreme Court held:

> [C]ollectibility of damages in an underlying case is a matter which must be considered in a legal malpractice action and . . . the defendant/lawyer bears the burden of proving that the underlying case which formed the basis of the damages award in a legal malpractice action would not have been fully collectible.

*Id.* at 1032. The Court added that a plaintiff bringing a legal malpractice action is "entitled to have a jury determine the issue of collectability if there

- 16 -

are disputed facts or inferences which can be drawn from the facts." *Id.* at 1033 n.9.

*Kituskie* permits consideration of collectability as a defense to a malpractice action, rather than as a factor giving rise to liability. However, the broader point confirmed by *Kituskie* is that collectability of a judgment is an important consideration in pursuing litigation — one that lawyers are obligated to take into account.[7] Pencoyd should have the opportunity to prove that Attorney Milby was negligent in failing to consider whether he was naming as defendants in the underlying action those parties who were liable and against which a judgment could be collected. Therefore, we hold that the trial court erred in holding that Pencoyd's allegations failed to state a viable cause of action for legal malpractice as a matter of law.

We also hold that Pencoyd's legal malpractice action is not barred by collateral estoppel. Pencoyd interprets the trial court statement that it would refuse to allow Pencoyd to "re-litigate the matter," 1/13/16 Order, at 2 n.1, as a holding that collateral estoppel barred its claim. *See* Appellants' Brief at 21. The trial court did not expressly say that its conclusion was based on collateral estoppel principles, however, and we conclude that collateral estoppel does not bar the present action.

_____

[7] *See*, *e.g.*, *W.L. Douglas Shoe Co. v. Rollwage*, 63 S.W.2d 841 (Ark. 1933) (holding that delaying suit until a judgment becomes uncollectible gives rise to a malpractice action).

Under the doctrine of collateral estoppel, or "issue preclusion," "the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *In re Stevenson*, 40 A.3d 1212, 1222 (Pa. 2012) (quoting *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 n.5 (1979)).

> Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

*Selective Way Ins. Co. v. Hospitality Grp. Servs., Inc.*, 119 A.3d 1035, 1042 (Pa. Super. 2015). For collateral estoppel to apply, all of these elements must be met. *Id.*

A legal malpractice action does not litigate the same cause of action as the underlying case in which the malpractice allegedly occurred. Necessarily, the parties in the two suits are different: the underlying suit by Pencoyd was against Grasso Holdings; the malpractice suit is by Pencoyd against Attorney Milby and his law firm. There also is no identity of issues. The underlying action was brought by Pencoyd against "Grasso Holdings" and/or "Grasso Holdings Acquisitions, LLC" to collect on monies unpaid for construction work performed by Pencoyd. The current action is brought by Pencoyd against Attorney Milby and his law firm for alleged damages

resulting from their alleged negligence and breach of contract in connection with their commencement and litigation of the underlying claim. Pencoyd had no full or fair opportunity to litigate that malpractice issue in the underlying action, since it was in the course of that action that the malpractice allegedly occurred and since Pencoyd's alleged damages — resulting from uncollectability of the judgment — were not incurred until the underlying action ended.

Referring to the findings made by the trial court in the underlying action, Attorney Milby contends that a controlling issue in the malpractice case — which party is liable to Pencoyd on the construction debt — was conclusively determined when the court held Grasso Holdings liable and entered a judgment against it. Appellees' Brief at 7, 15. Attorney Milby asserts that this means that he could not have been negligent in suing Grasso Holdings. But Pencoyd's theory of recovery here is that Attorney Milby was negligent in suing **only** Grasso Holdings, and in not also suing David Grasso and his other companies — particularly, GH Property — parties that allegedly were both liable and able to pay the judgment. The trial court in the underlying action did **not** find that David Grasso and GH Property could not also be held liable to Pencoyd; there would have been no basis for such a finding, since David Grasso and GH Property were not named defendants in that case. The judgment in the underlying action therefore does not conclusively answer the question whether these other potential

defendants shared liability. Notably, however, the trial court cited evidence that Grasso Holdings acts "through its affiliates," and it found that "there was substantial intermingling of corporate affairs" among the Grasso companies. Am. Compl., Ex. D, ¶¶ 57, 61.

This matter thus involves different parties and issues from the underlying action. Without equivalence of issues and parties, collateral estoppel does not apply, **Selective**, 119 A.3d at 1042, and, accordingly, does not bar Pencoyd's current legal malpractice case.

In light of the foregoing, we conclude that Pencoyd has stated a cause of action sounding in legal malpractice against Attorney Milby and his firm and that principles of collateral estoppel do not preclude assertion of that action. Our holding is narrow. Pencoyd's theory of recovery is hotly contested and may be subject to various defenses. The parties have identified material disputes about several elements of Pencoyd's malpractice claim, including whether the judgment against Grasso Holdings in the underlying action is truly uncollectible. These are genuine issues of material fact to be determined by a factfinder during the course of the legal malpractice action, **see Kituskie**, 714 A.2d at 1033 n.9, but they are not reasons to hold that no cause of action may be asserted as a matter of law. The trial court erred in determining otherwise. Therefore, we reverse the dismissal of Pencoyd's legal malpractice claim.

**Dismissal of Pencoyd's Unjust Enrichment Claim**

Finally, we affirm the trial court's dismissal of Pencoyd's unjust enrichment claim against Attorney Milby and his firm. A "cause of action for unjust enrichment arises only when a transaction is not subject to a written or express contract." ***Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co.***, 933 A.2d 664, 669 (Pa. Super. 2007). Here, Pencoyd had a written and express contract with Attorney Milby and his firm — the mutually signed August 21, 2009 letter agreement solemnizing retention of the firm to engage in "proceedings to collect monies owed to Pencoyd." Am. Compl., Ex. "A," at 1. As such, there is no basis for Pencoyd's claim of unjust enrichment, and the trial court's dismissal of that claim will not be disturbed. 1/13/16 Order, at 2 n.1.

In sum, we reverse the dismissal of Pencoyd's claim for legal malpractice and affirm the dismissal of the claims brought by Mr. Heldring individually and of Pencoyd's claim for unjust enrichment. We remand for further proceedings consistent with this opinion.

Order affirmed in part, reversed in part, and remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/2016