J-S45001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DAVID A. HISH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LINDA BROWAND PELSYNSKI | : | |
| | : | |
| Appellant | : | No. 926 EDA 2020 |

Appeal from the Judgment Entered March 16, 2020
In the Court of Common Pleas of Wayne County
Civil Division at No(s):  No. 2018-00271

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                          **FILED:  FEBRUARY 16, 2021**

Linda Browand Pelsynski appeals from the judgment entered against her and in favor of David A. Hish following a non-jury trial on Mr. Hish's claims of breach of contract and replevin.  We vacate the judgment, affirm in part and reverse in part the order denying Ms. Pelsynski's post-trial motion, and remand for entry of a verdict and judgment consistent with this memorandum.

The following facts are not in dispute.  Mr. Hish, a contractor by trade, began dating Ms. Pelsynski in August 2015 after they met online.  From the fall of 2015 onward, the relationship grew, with the parties residing together and marriage being discussed.  However, their relationship ended in March 2017.

Just prior to meeting Mr. Hish, Ms. Pelsynski had purchased a property at a foreclosure sale on which were several structures in a state of disrepair

("the Property"). Almost immediately after their relationship commenced, Mr. Hish began performing work on the Property. Mr. Hish, *inter alia*, demolished and removed rotted and moldy walls, ceilings, roofs, and a deck, and installed a new roof, walls, flooring, plumbing, wiring, windows, and vinyl siding. Ms. Pelsynski assisted in the work on weekends, and periodically reimbursed Mr. Hish for materials he purchased for use on the Property. When the relationship ended in March 2017, Mr. Hish presented Ms. Pelsynski a bill for $56,033.20 representing the costs for 1,814 hours of labor, $6,740 for materials, and $3,943.20 for fuel for his vehicle. She declined to pay, and Mr. Hish commenced this action seeking payment for his work, pursuant to either contract law or a theory of unjust enrichment, and return of his tools and equipment that remained at the Property through a replevin claim.[1]

The case proceeded to a non-jury trial on November 4, 2019, at which the parties offered contradictory accounts of the termination of their relationship and differing understandings of the basis of Mr. Hish's work. Mr. Hish indicated that, separate from their romantic relationship, he and Ms. Pelsynski had a business arrangement by which she would supply the materials and he would perform the necessary repairs and improvements to the Property at a reduced hourly rate. He testified that he provided Ms.

---

[1] While it does not appear that Ms. Pelsynski had prevented Mr. Hish from retrieving the items that were subject of Mr. Hish's replevin claim, she did not dispute that they were in her possession at the Property.

Pelsynski an initial estimate of $50,000 to perform the work, but increased that to $90,000 once the full extent of the Property's deterioration was discovered. Mr. Hish became concerned that he was not being paid for the work he was performing, but Ms. Pelsynski assured him that she would pay him after she sold the house. When she took no steps to put the house on the market, and kept deflecting Mr. Hish's requests for payment for his labor, he broke up with her because he felt that he "was taken advantage of." N.T. Trial, 11/4/19, at 18.

Ms. Pelsynski's version of events is quite different. She testified that the parties never discussed any business arrangement, and that Mr. Hish took it upon himself to do the repairs, often without consulting with her or seeking her approval for the materials used. She had no idea that he would be charging her for the work, and did not even know his hourly rate. Ms. Pelsynski saw their relationship solely as a romance, and, with discussions of marriage, thought the work Mr. Hish performed on the property was his contribution to their future together, since he did not "help pay otherwise financially to the running of [their] household."[2] *Id*. at 42. According to Ms. Pelsynski, the parties broke up initially in November 2016 because she would "catch him in lies" and felt uncomfortable with his lack of honesty. *Id*. at 43.

---

[2] Mr. Hish indicates that Ms. Pelsynski's contention is "that having a relationship was compensation for his work performed at the Property." Mr. Hish's brief at 7. As the above reflects, that is not a fair representation of Ms. Pelsynski's position.

They got back together the following month after Mr. Hish came to the Property to gather his things, but Ms. Pelsynski terminated the relationship for good in March 2017.

On January 15, 2020, the trial court, accepting Mr. Hish's account, entered a verdict against Ms. Pelsynski in the amount of $54,433.20 on Mr. Hish's breach of contract claim.[3] Finding in favor of Mr. Hish on his replevin claim as well, the court provided a list of items in Ms. Pelsynski's possession to be returned to him. Ms. Pelsynski filed a timely post-trial motion, which the trial court denied by order of February 20, 2020. Judgment was subsequently entered on the verdict, and Ms. Pelsynski filed a timely notice of appeal on March 17, 2020. Both Ms. Pelsynski and the trial court complied with Pa.R.A.P. 1925.

Ms. Pelsynski presents the following question for our consideration:

Were the trial court's findings of fact regarding the alleged agreement entered into between [Ms. Pelsynski] and [Mr.] Hish and its conclusion that [they] entered into a value [sic] verbal agreement supported by competent evidence of record when [Mr.] Hish never testified that [Ms. Peslynski] agreed to pay his hourly rate or travel expenses, or that [she] agreed to the majority of the work he did on her property, while [she] denied that she agreed to pay [Mr.] Hish for his labor or travel expenses and testified that she did not authorize the work he did on her property?

_____

[3] Finding a viable claim sounding in contract, the trial court deemed Mr. Hish's unjust enrichment claim to be moot. *See*, *e.g.*, *Heldring v. Lundy Beldecos & Milby, P.C.*, 151 A.3d 634, 645 (Pa.Super. 2016) ("A cause of action for unjust enrichment arises only when a transaction is not subject to a written or express contract." (cleaned up)).

Ms. Pelsynski's brief at 5.

We begin with the pertinent legal principles. Our standard of review "is limited to: a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law." *Landis v. Wilt*, 222 A.3d 28, 34 (Pa.Super. 2019) (internal quotation marks omitted). "Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion." *Id*. "When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected." *Id*.

> In a non-jury trial, the factfinder is free to believe all, part, or none of the evidence, and the Superior Court will not disturb the trial court's credibility determinations. Assessments of credibility and conflicts in evidence are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgments for those of the factfinder. The test is not whether this Court would have reached the same result on the evidence presented, but rather, after due consideration of the evidence the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Gutteridge v. J3 Energy Grp., Inc.*, 165 A.3d 908, 916 (Pa.Super. 2017) (*en banc*) (cleaned up).

Turning to the applicable substantive law, we observe the following. "Before a contract can be found, all of the essential elements of the contract

- 5 -

must exist." ***Cardinale v. R.E. Gas Dev. LLC***, 74 A.3d 136, 140 (Pa.Super. 2013) (internal quotation marks omitted). An enforceable contract exists where "the parties to it 1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with sufficient clarity." ***Helpin v. Trustees of Univ. of Pennsylvania***, 969 A.2d 601, 610 (Pa.Super. 2009) (cleaned up), *aff'd on other grounds*, 10 A.3d 267 (Pa. 2010).

"While an agreement in order to be binding must be sufficiently definite to enable a court to give it an exact meaning, not every term of a contract must always be stated in complete detail." ***Nicholas v. Hofmann***, 158 A.3d 675, 694 (Pa.Super. 2017) (cleaned up). Although no enforceable contract exists "[i]f the essential terms of the agreement are so uncertain that there is no basis for determining whether the agreement has been kept or broken," the terms must only be "certain enough to provide the basis for providing an appropriate remedy." ***United Envtl. Grp., Inc. v. GKK McKnight, LP***, 176 A.3d 946, 963 (Pa.Super. 2017) (cleaned up).

In an action for breach of contract, establishing the existence of an agreement and its essential terms is the first element. ***See***, ***e.g.***, ***Linde v. Linde***, 210 A.3d 1083, 1090 (Pa.Super. 2019). To recover, the plaintiff must also establish that the defendant failed to perform her contractual obligations, and that the plaintiff suffered damages as a result. ***Id***.

With these canons in mind, we turn to Ms. Pelsynski's arguments. Ms. Pelsynski contends that there is insufficient evidentiary support for the trial court's factual finding that she agreed to pay Mr. Hish $25 per hour, plus travel expenses, to remodel her house.[4] Specifically, she asserts that neither party testified that she requested that Mr. Hish perform the work, or that she would pay him for labor and materials. *See* Ms. Pelsynski's brief at 26. Ms. Pelsynski claims that "[w]hile [Mr.] Hish testified that he did work on [the P]roperty, he never testified that it was at [Ms. Pelsynski's] express direction . . . ." *Id*. at 26-27. Likewise, "[w]hile [Mr.] Hish testified that he conveyed to [Ms. Pelsynski] what his hourly rate was, he never testified that she actually agreed to pay this hourly rate." *Id*. Further, although Mr. Hish testified that he traveled ninety miles round trip at times when he worked on the Property, "he

_____

[4] Ms. Pelsynski also makes much of the fact that the statement of facts offered by the trial court in its opinion and verdict does not reference the trial testimony and evidence, but rather repeats, at times verbatim, the narrative of the case stated in Mr. Hish's pretrial statement. *See* Ms. Pelsynski's brief at 23-25. Ms. Pelsynski notes that the trial court's findings that Ms. Pelsynski purchased the Property with the intent to flip it for a profit, that the parties' romantic relationship ended in October 2016, and that Mr. Hish began working on the Property in August 2015 have no support in the record, and in some instances contradicts both parties' testimony. *Id*.

Our review of the trial transcript and exhibits reveals that Ms. Pelsynski is correct that these particular "facts" are not supported by the trial evidence, and that they do appear to have instead been taken from Mr. Hish's pre-trial statement. However, because none of these "facts" goes to an element of Mr. Hish's claim, we deem it harmless error. *See Stuyvesant Ins. Co. v. Keystate Ins. Agency, Inc.*, 218 A.2d 294, 297 (Pa. 1966) (ruling that incorrect factual finding did not merit relief where it was not necessary for the verdict).

never testified that he conveyed to [Ms. Pelsynski] that he would be charging her for 'travel expenses,' or how these charges would be based, and never testified that [she] agreed to pay for them." *Id*. at 27.

Ms. Pelsynski contrasts Mr. Hish's "sporadic and vague at best" testimony with her own. *Id*. at 26. She notes that she "was specific in adamantly denying" that she had any oral agreement with Mr. Hish, and notes repeated instances of her denials in the record. *Id*. at 27-28. She suggests that her version of events is corroborated by their actions, namely that they had not a business relationship but a romantic one, cohabiting on the Property and discussing marriage, and that there was no evidence that Mr. Hish requested to be paid for his labor until after they broke up. *Id*. at 28-29. Although she acknowledges that assessing the credibility of witnesses is generally left to the fact finder, Ms. Pelsynski claims that this Court should not defer to the trial court's findings in this case because the trial court has failed to "cite any specific testimony, exhibits, or other basis for its credibility determinations." *Id*. at 29.

We agree with Ms. Pelsynski that the trial court's opinion and verdict is scant on details explaining why it found that the parties had an oral contract regarding Mr. Hish's work on the Property, or precisely what the terms of the agreement were. In supporting its conclusion that a contract existed, the court stated only as follows, with no reference to particular testimony or exhibits:

In the instant matter, there was a valid oral contract. After purchasing the [Property] for the purposes of flipping the home for profit, [Ms. Pelsynski] specifically requested that [Mr. Hish] perform significant remodeling and Plaintiff would receive full payment for all his labor costs and materials at the time of the sale of the home. This request was an offer to which [Mr. Hish] accepted by commencing the demolition of the interior of the home. The consideration, in other words, the bargained for exchange of value between both parties, would be the payment of the labor costs and material in exchange for [Mr. Hish's] contracting services. Thus, as all elements of a contract formation are present, [Mr. Hish] and [Ms. Pelsynski] had established a binding contract.

Opinion and Verdict, 1/15/20, at 4.[5]

Yet, as noted above, this Court's role is to review the evidence offered at trial in the light most favorable to Mr. Hish, giving him all reasonable inferences and rejecting all unfavorable inferences, and deciding whether it is sufficient to support the trial court's finding that the parties entered into an oral contract. **See Landis**, **supra** at 34.

Mr. Hish testified that a few weeks after he and Ms. Pelsynski had begun dating, they agreed upon a business arrangement. **See** N.T. Trial, 11/4/19, at 6. He performed an initial inspection of the Property, discussed with her "different things wrong about the house," and gave her a first estimate of "around 50,000" dollars. **Id**. at 6, 15. After they discovered "all the rot and everything," the estimate went up to $90,000. **Id**. at 15. Ms. Pelsynski opted

---

[5] The trial court's findings as to the terms of the agreement were not further elucidated in its Pa.R.A.P. 1925(a) opinion. Nonetheless, the court did therein make it clear that it found Mr. Hish to be credible and Ms. Pelsynski to be incredible. **See** Statement of Reasons, 5/8/20, at 1.

not to agree to a single price for the entire job. *Id*. at 73-74. Instead, the parties came to understandings as to exactly what work Mr. Hish would perform "through conversations and estimates" that arose from at least ten joint inspections of the Property. *Id*. at 7-8. The parties agreed that Mr. Hish would supply the labor, while Ms. Pelsynski would furnish the materials. *Id*. at 15. Mr. Hish advised Ms. Pelsynski that his hourly rate was $25,[6] and she agreed to pay him at a later date when she came into some money. *Id*. at 15-16. Indeed, in 2016, Ms. Pelsynski told Mr. Hish "I know I owe you a lot of money and I'm going to pay you, don't worry." *Id*. at 17. When she still had not paid him for labor after he performed over 1,700 hours of work, Mr. Hish terminated the arrangement, sent her an invoice detailing his labor costs and unreimbursed expenses. *Id*. at 14, 23. Mr. Hish offered a copy of the invoice into evidence, and discussed how the work had been performed in accordance with their agreement. *See id*. at 8-14; Plaintiff's Exhibit 2. The total amount of unpaid labor was $45,350. *See* Plaintiff's Exhibit 2 at 10. Further, he had fronted $5,140 for materials for which Ms. Pelsynski had not reimbursed him.[7] *See id*.; N.T. Trial, 11/4/19, at 33.

_____

[6] Mr. Hish indicated that he was "giving her a break" at that rate, as he normally charged $50 to $100 per hour. N.T. Trial, 11/4/19, at 73.

[7] The invoice lists $6,740 in out-of-pocket materials expenses; however, Mr. Hish acknowledged that a $1,600 item was "a typo." N.T. Trial, 11/4/19, at 33. In rendering its verdict, the trial court omitted that item, reaching a total of $5,140 for materials. *See* Statement of Reasons, 5/8/20, at 2.

Applying our standard of review to this trial evidence, we conclude that trial court permissibly found that Ms. Pelsynski agreed to pay Mr. Hish $25 per hour to perform repairs and reconstruction work on the Property detailed in Mr. Hish's invoice, as well as for the necessary materials. There was a mutual understanding, consideration, and sufficiently clear terms "to provide the basis for providing an appropriate remedy." **United Envtl. Grp., Inc.**, **supra** at 963 (cleaned up). Thus, we must affirm the trial court's finding that Ms. Pelsynski agreed to pay Mr. Hish for labor and materials.

Conversely, we find no evidence to support the trial court's finding that Ms. Pelsynski agreed to pay Mr. Hish for his travel expenses.[8] While the cost of gas for his truck likely figured into his whole-job estimates of $50,000 and $90,000, as noted above, Mr. Hish testified that Ms. Pelsynski declined to agree to such an arrangement. Yet Ms. Pelsynski opted not to agree to a flat price. **See** N.T. Trial, 11/4/19, at 73-74. As detailed above, Mr. Hish testified

---

[8] Ms. Pelsynski did not specifically reference travel expenses in her post-trial motion or her Pa.R.A.P. 1925(b) statement. However, she did contend that the trial court erred in finding that she had entered into a contract to pay Mr. Hish for his claimed labor and expenses, and complained that the trial court's lump-sum verdict failed to specify how it reached its number. **See** Motion for Post-Trial Relief, 1/24/20, at 2-3; Statement of Matters Complained of on Appeal, 4/30/20, at 1-2. The certified record confirms that the trial court indicated for the first time that its verdict included travel expenses when it issued its Pa.R.A.P. 1925(a) statement for this Court. Accordingly, we do not deem Ms. Pelsynski to have waived her challenge to the propriety of an award of travel expenses, which she did contest at trial. **See** N.T. Trial, 11/4/19, at 56.

regarding her agreement to pay for labor and materials. As to travel expenses, Mr. Hish merely confirmed that he requested them in his invoice and explained how he arrived at the figure of $3,943.20.[9] *Id*. at 18. However, Mr. Hish did not testify, or otherwise offer evidence, that the oral contract he entered into with Ms. Pelsynski included reimbursement for travel expenses.

Further, the trial court's findings as to the terms of parties' agreement extended only so far as the costs of materials and Mr. Hish's labor. **See** Opinion and Verdict, 1/15/20, at 4 (concluding that the consideration supporting the agreement "would be payment of the labor costs and material in exchange for [Mt. Hish's] contracting services"); *id*. ("[Ms. Pelsynski] indicated that she would pay [Mr. Hish] in full for his labor and materials which she has failed to do.").

"Damages for a breach of contract should place the aggrieved party in as nearly as possible in the same position it would have occupied had there been no breach." *Ely v. Susquehanna Aquacultures, Inc.*, 130 A.3d 6, 10 (Pa.Super. 2015). Since the parties' agreement did not include payment of Mr. Hish's travel expenses, he would not have received them even if Ms. Pelsynski had fully performed her contractual obligations. As such, the award of travel expenses does not place Mr. Hish in the same position he would have

---

[9] The calculation involved the number of miles he put on his truck, which gets thirteen miles to the gallon, and an average fuel price of $2.65 per gallon. **See** Plaintiff's Exhibit 2 at 8.

been in had there been no breach. Therefore, we conclude that the award of $3,943.20 in travel costs to Mr. Hish must be deducted from the verdict. *Accord Creighan v. City of Pittsburgh*, 132 A.2d 867, 873 (Pa. 1957) (holding that when the legally-proper amount of judgment is apparent from the record, a case may be remanded with a direction for entry of judgment rather than ordering a new trial).

Accordingly, we vacate the March 16, 2020 judgment, reverse the order denying Ms. Pelsynski's post-trial motion to the extent that she challenged the award of $54,433.20 in damages for breach of contract, affirm the order in all other respects, and remand for entry of a verdict and judgment consistent with this memorandum.

Judgment vacated. Order denying post-trial motion affirmed in part and reversed in part. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/16/21